JEPTHA E. PITZNOGLE AND MARY E. PITZNOGLE, HIS WIFE, *vs.* THE WESTERN MARYLAND RAILROAD COMPANY.

*Eminent Domain: private property; public use; private use; power of Legislature; judicial question; railways; closing private ways. Condemnation of land for private way: railways; use of land; public. Condemnation proceedings: Chapter 117 of Acts of 1912; "jury in court" instead of of sheriff's jury. Jury panel: exhaustion of—. Prayers: without evidence.*

There is no express prohibition in the Constitution or Declaration of Rights against taking private property for private use; but the prohibition is implied in section 40 of Article 3 of the Constitution. p. 677

The Legislature can not make a particular use public or private, merely by so declaring it. p. 678

Whether the use for which private property is taken is to be public or private, within the meaning of the Constitution, is a judicial question to be decided by a Court. p. 678

The right that railroads acquire over the lands they occupy is not for a private, but for a public use. p. 679

Where a railroad company having power of condemnation sought by apt proceedings to acquire certain land, including a strip on which to open a new private road to replace a private road which it wished to close, in order to widen its right of way and provide additional tracks, etc., it was *held,* that it could not be objected that the strip of land so acquired would not enure to the public service nor tend to promote public use nor have relation to the public welfare and convenience. pp. 668-681

In general, if for any reason there is no regular panel in attendance, when there are cases to be tried which require the intervention of a jury, the Court has power to order a special venire. This is a common law power inherent in the courts.
                                                                   p. 684

When, however, at the time to be fixed by the Court for trial of such matters as are to be heard by a jury, the regular panel for the term will be present, or under the practice of existing statutes it can be reconvened for the purpose of hearing such matters at that time, the Court should, in the absence of some sufficient cause to the contrary, direct the jury to be selected from the regular panel, and for that purpose take such steps as may be necessary to have them present. If there be not a sufficient number of qualified jurors then present, the Court may, of course, direct such number of talesmen as may be necessary to be summoned.                              p. 684

The failure of the sheriff (in condemnation proceedings) to include in his return the names of the persons summoned under the order of the Court to serve as jurors, can not invalidate the return nor affect the eligibility as jurors of those summoned by him under the order of Court to which such return was made.            .  `                              p. 684

Chapter 117 of the Act of 1912, providing that the condemnation proceedings therein provided for "shall be before a jury in Court instead of before a sheriff's jury," does not require such jury to be selected in the usual way from those regularly drawn as jurors, to serve at a given term of the Court.
                                                                   p. 684

But the testimony in such proceedings is to be taken and the case tried in the presence of the Court and subject to its direction as in other cases.                              p. 684

In condemnation proceedings, a prayer by the defendant based upon the theory that the plaintiff corporation could *"with reasonable convenience, for the necessary extension and addition to its yards aforesaid,"* use certain other lands spoken of by the witnesses, is erroneous where there was no testimony in the case that the plaintiff could use such lands with reasonable convenience.                              pp. 685-686

*Decided April 2nd, 1913.*

Appeal from the Circuit Court for Washington County (KEEDY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Frank G. Wagaman* and *Harry Brindle,* for the appellant.

*Charles S. Little* (with whom was *Benjamin A. Richmond* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Washington County condemning the right, title and interest of the appellants in a parcel of land lying and being near Hagerstown, Maryland.

The appellee, The Western Maryland Railway Company, filed its petition in the Court below against the appellants under Chapter 117 of the Acts of 1912, in which it alleges that it "desires to acquire the said parcel of land to be used for the purpose of locating its railroad tracks, switches, yard tracks and side tracks * * * on part of the same, and for the location of a substitute private road on the remainder thereof in place of the existing private road which the petitioner desires to close and to use for railroad purposes, said private road being known and designated as the Startzman road. All of which above described parcel of land it will be necessary for the petitioner to have and use for the said purposes, for the private working and operation of its railroad and for the proper handling of its railway business, and for said private road."

The land sought to be acquired by the appellee is particularly described in the petition and its location is shown by the following plat therewith filed as a part of said petition:

The defendants demurred to the petition, contending, 1st, that Chapter 117 of the Acts of 1912, the Act under which the petition was filed, is unconstitutional; and, 2nd, that the petition is insufficient as a basis of a judgment of condemnation, because all of the land sought to be acquired thereby is not, as alleged in the petition, to be used for railroad purposes, but a part of it is to be used "for the location of a substitute private road in place of the existing private road," which is to be closed and used by the petitioner for railroad purposes.

The questions here raised and relied upon by the defendants as affecting the constitutionality of this Act, were fully presented and argued in the recent case of *Ridgely* v. *Mayor and City Council of Baltimore, Ante* page 567, and this Court there held the Act constitutional, in adopting the opinion of JUDGE BURKE, sitting in the lower Court, in which the objections urged against the validity of the statute were fully and ably discussed by him. Therefore, we think it unnecessary to further discuss this objection of the defendants made in support of the demurrer.

There is no prohibition in express terms against the taking of private property for private use found either in our Constitution of the Declaration of Rights, but it is too clear to be questioned that there is such an implied prohibition contained in section 40 of Article 3 of the Constitution of this State, which provides that "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." *Arnsperger* v. *Crawford,* 101 Md. 251.

This constitutional prohibition, as was said by JUDGE ALVEY in the case of *New Central Coal Company* v. *George's Creek Coal and Iron Co.,* 37 Md. 559, "Is but declaratory of the previously existing universal law, which forbids the arbitrary and compulsory appropriation of one man's property to the mere private use of another, even though com-

678   PITZNOGLE vs. WESTERN MD. R. R. CO.

Opinion of the Court.                    [119

pensation be tendered." And "the Legislature cannot make
a particular use, either public or private, merely by so
declaring it. If it could do so the constitutional restraint
would be utterly nugatory." *Arnsperger* v. *Crawford,
supra; New Central Coal Co.* v. *George's Creek Coal and
Iron Co., Supra.* Whether the use for which private prop-
erty is taken is public or private, within the meaning of the
above provision of the Constitution, is a judicial question to
be determined by the Courts. *Van Witsen et al.* v. *Gutman,*
79 Md. 405.

It is not contended by the defendants that the use of the
land for railroad purposes is a private and not a public use,
but they contend that the use of a part of the land for the
location of a private road in substitution for the existing
private road, which is to be closed and used by the plaintiff
company for railroad purposes, is a private use of said land,
and that in as much as the petition does not state or desig-
nate how much and what part of the entire parcel of land so
sought to be condemned is to be used for the location of
said private road, and how much and what part is to be
used for railroad purposes, the whole must fall.

The correctness of this contention must be conceded should
we hold, under the facts and circumstances of this case, that
the use of a part of said lands for such private road or way
is a private use and not a public use. But is it a private
use? In determining this question we are to be controlled
by the facts, circumstances and necessities of this case.

The increase in the business of the plaintiff company, as
disclosed by the testimony, necessitates an enlargement of
what is known as the yards west of Hagerstown, which is
fully explained in the record. The road as it now runs is
seven hundred feet south of the Pitznogle lands, but by the
removal of curves in it, the road will thereafter run about
parallel with the south line of said lands, and its center line
will be, as it appears from the plat, at the nearest point,
about thirty feet, and at the farthest point not over forty
feet from said lands. Upon this intervening narrow strip of

land, for a distance of several hundred feet westward from the Schlotterbeck lands, and occupying the most of it, is located a private road or way, which, at the point named, turns southward and crosses the proposed track of the railroad. This private road or way, known as the Startzman road, in which Startzman and others have at least an easement, is used by them in reaching the Clearspring pike north of the railroad from their respective homes.

It is shown that the whole of this intervening space, including the road or way thereon, is required for railroad purposes, that is, for laying the tracks, sidetracks and switches of said road, and this is also true of at least a portion of the land that they have sought to condemn. Without the use of this road or private way for the purposes that we have mentioned, the plaintiff would be defeated in its proposed plan of straightening its road and of enlarging its yard, and to close this road without substituting for it another road or way would deprive those entitled to its use of the means of reaching the pipe from their homes, and they would not be permitted to condemn a private road or way (*Arnsperger* case) in substitution for the road lost to them, resulting from its necessary use for railroad purposes, which this Court has time and again said was a public and not a private use.

The right of eminent domain having been conferred upon the plaintiff by legislative enactment, it has the undoubted right to condemn, if need be, the aforementioned Startzman road or private way for railroad purposes, and in our opinion it was not intended by the framers of the Constitution that there should be no adequate relief from the conditions that we have mentioned, resulting from the taking of said private road for public use. The condemnation of a part of this land, here sought to be condemned, for a substitute private road or way is incident to and results from the taking, by reason of public necessity, of the existing private road for public use, and the use of it for such purposes should, we think, be regarded as a public use within the meaning of the Constitution.

The Legislature of this State has, by enactment of section 278 of Article 23 of the Code of 1912, declared it lawful for a railroad company, where its tracks cross any public or private road or way, "to carry said road or highway over its tracks by an overgrade crossing, or to carry it under its track or tracks by an undergrade crossing, and to make such crossings, such corporation may divert any road or highway, so crossed or to be crossed, from its present or existing location; and for entering upon, taking or appropriating any building, gardens, yards, or other lands which may be necessary for the new route and the location of said road so diverted, said corporation may proceed as in case of land necessary for its railroad."

It is contended by the plaintiff, although controverted by the defendants, that this statute is applicable to the present case, but assuming, without deciding, that it does not apply, the uses for which private property is permitted to be taken thereunder are similar in character to the use here proposed to be made of the land sought to be acquired in these proceedings, and the validity of this statute, so far as we are informed, has never been assailed because of its contravening the Constitution of this State, in permitting private property to be taken thereunder for private and not for public use, although, no doubt, it has been many times availed of when the necessity for its application arose in the construction of railroads.

In the case of *Van Witsen et al* v. *Gutman, supra,* it was held by this Court that the use to which the defendant, Mrs. Gutman, under an ordinance of the Mayor and City Council of Baltimore, appropriated the property of the plaintiff in an alley upon which his lands abutted, was a private and not a public use. In discussing that case, this Court said: "The extinguishment of their (the plaintiffs') interest does not appear to enure in any way to the public service, nor to tend to the relief of any public necessity, nor promote any public interest, nor to subserve any public purpose, nor, in short,

to have any relation to the public convenience or public welfare." This 'can not be said of the use to which the lands here sought to be condemned are to be appropriated, for the extinguishment of the defendant's interest in the property here mentioned enures to the public service and has connection with and relation to the public welfare.

Upon the Court below overruling the demurrer, the defendants answered and the plaintiff filed its replication, whereupon the Court, on the 13th of September, passed its order directing the sheriff to "summon twenty good and lawful men of Washington county to appear at the Court House on the 17th day of September, 1912, at the hour of 9.30 A. M., to act and serve as jurors at the hearing and determination of said case." The sheriff's return thereto was "Jurors summoned as commanded." For some reason not disclosed by the record the case was not heard on the 17th, but on September 19th, two days thereafter, at which time the defendants moved to quash and annul the said order of Court passed on September 13th. This motion being overruled, the defendants then moved to quash the proceedings of the sheriff under said order, and particularly his return thereto. This motion, too, was overruled, whereupon the defendants entered a "challenge to the array," which was denied them, when the defendants refused the list of jurors.

These various motions arose from the contentions of the defendants, which were: 1st, that the jury was not selected in the manner intended and provided for by said Chapter 117 of the Acts of 1912; and 2nd, that the return of the sheriff "Jurors summoned as commanded," was not a proper return, inasmuch as it did not give the names of the persons so summoned by him.

The defendants contend that in cases like the one before us, the Act of 1912, Chapter 117, prohibits the method here adopted of selecting persons to serve as jurors, and they insist that under that statute, which is now in force, jurors in such cases should be selected, in the usual way, from those regularly drawn as jurors to serve at a given term of the

Court. It is upon the following language found in the title and repeated in the first section of the Act that the defendants base their contention, to wit: "Providing that the proceedings therefor shall be before a jury in Court instead of before a sheriff's jury." In addition to this language there is nothing in the Act that sheds further light upon the question here raised.

Prior to the passage of this Act, in proceedings like the one before us, the jury was not only selected by the sheriff, but the hearing was before him, that is, in his presence, and out of the presence of the Court, and it is to such a jury that the statute has reference when it speaks of a *"sheriff's jury,"* and it is it which the statute distinguishes from a *"jury in Court."* Under the present law there is no express direction as to how a jury shall be selected, but it is required that the proceedings shall be before a "jury in Court," that is, the testimony shall be taken and the case tried in the presence of the Court and subject to its direction as in other cases.

In support of their contention, our attention has been called by the appellants to the language of this Court in the case of *Baltimore Belt R. R. Co.* v. *Baltzell,* 75 Md. 94, in which it said: "The term 'jury' used in a constitution or statute will be understood as meaning a common law jury."

This expression of the Court, however, taken from the body of the opinion is misleading when not considered in connection with what else said by the Court in relation thereto. The Court there said: "But for the opinion of the judge below, it would not have occurred to us there was any difficulty as to this question. Ordinarily, it is true, the term 'jury' used in a constitution or a statute will be understood as meaning a common law jury, and, if no other jury had been known in law at the time of the adoption of the Constitution of 1851 (Art. 3, sec. 46), this argument might have been unanswerable. But it is conceded from the earliest colonial history, and from the formation of the State Government down to the adoption of the constitution, the Legislature had provided for the taking of pri-

vate property for public use, upon making compensation
to the owner, as assessed by a special jury summoned on
warrant. * * * As to railroads, the Legislature without excep-
tion, provided that the compensation should be awarded by a
special jury summoned as directed by section 167 (Art. 23,
Code 1888). In two-thirds of the counties of this State, there
are but two jury terms a year, each about six months apart,
and we can hardly suppose the framers of the constitution
meant to delay and embarrass the construction of railroads
and other public improvements, by requiring compensation
to be awarded in Court by a common law jury. At least, if
such had been the intention, if they intended to deny to the
Legislature the exercise of a power in this respect,—a power
which had been exercised from the beginning of the Govern-
ment—it is but fair to presume this intention would have
been declared in plain and explicit terms."

What was there said in no wise supports the contention of
the defendants, but on the contrary, furnishes us with author-
ity to hold in this case that such is not the meaning of the
constitution. And what was then said as to the infrequent
convening of the jury terms of our Courts in many counties
of this State, is true at the present time, and it has special
application to this case. They have in Washington county
what are known as three jury terms in each year, which con-
vene on the second Monday in February, May and Novem-
ber, respectively, and one non-jury term which convenes on
the first Monday in August. It will thus be seen that be-
tween the first Monday in August and the second Monday in
November in each year, a period of three and one-half
months, there is no regular panel, that is, a panel regularly
drawn for a given term, from which a jury could be selected
to hear and determine cases of this character. The petition
in this case was filed on August 9th, and therefore if the
case was to be heard only by a jury such as we have men-
tioned, regularly selected under a statute for a given term of
Court, this case could not have been heard for more than
three months from the date of the filing of the petition. And

as was said in the case from which we have just quoted, we can hardly suppose the framers of the constitution or of the statute under which these proceedings were instituted, meant to delay and embarrass the construction of railroads and other public improvements for this length of time.

"If for any reason there is no regular panel in attendance and there are cases to be tried which require the intervention of a jury, the Court has power to order a special venire. This is a common law power inherent in the Courts." 24 *Cyc.* 230; 17 *Amer. & Eng. Enc. of Law,* (N. S.) 1192; *Rockford Ins. Co.* v. *Nelson,* 75 Ill. 552.

When, however, at the time to be fixed by the Court for trial of such matters as are to be heard by a jury the regular panel for the term will be present, or under practice of the Court, or existing statutes, can be reconvened for the purpose of hearing such matters at that time, the Court should in the absence of some sufficient cause to the contrary direct the jury to be selected from the regular panel, and for that purpose take such steps as may be necessary to have them present. If there be not a sufficient number of qualified jurors then present, the Court may, of course, direct such number of talismen, as may be necessary to be summoned.

The objection made by the defendants to the return of the sheriff because of his failure to return therewith the names of the persons summoned by him, under the order of Court, to serve as jurors, can not, in our opinion, have the effect of invalidating the return, nor can it affect the eligibility, as jurors, of those summoned by him under the said order of Court to which such return was made. Had they asked for it, the Court would no doubt have required the sheriff to have amended his return, giving the names of those summoned by him. But in any event, it would not have invalidated the return or rendered ineligible, as jurors, those summoned by him.

In the progress of the trial six exceptions were noted by the defendants, five to the rulings of the Court on the admission of evidence, and one to its rulings on the prayers. The

petitioner offered five prayers, all of which were granted, and the defendants offered eighteen prayers, two of which, the third and eighth, were granted and the others were rejected. The Court, however, granted an instruction in lieu of the fifth prayer offered by the defendants. The defendants excepted to the granting of the plaintiff's prayers and to the rejection of their prayers, as well as to the instruction of the Court granted in lieu of their fifth prayer.

The five exceptions to the rulings upon the evidence were not pressed in the oral argument or alluded to in the brief. We, however, discover no error in the admission of the testimony.

As we have already very fully stated the law of this case, we will not now discuss each of the five granted prayers of the plaintiff, or the sixteen rejected prayers of the defendants, but will state generally that the granted instructions, including the prayer of the Court, properly presented the law of this case to the jury, and there is nothing contained therein that is materially inconsistent with the law of the case as we have stated it in this opinion. We will, however, discuss briefly the sixteenth prayer of the defendants, to which our attention has been particularly called and which is not covered by what we have already said.

In this prayer the Court was asked to instruct the jury that should they find that land in addition to that already used and occupied by the railroad, was reasonably necessary for the construction of the addition to the yards of the company, "still the verdict of the jury should be for the defendants if the jury shall further find that the plaintiff is the owner of the tract of land spoken of by the witnesses as the Crawford farm, and also of the tract spoken of by the witnesses as having been purchased by the plaintiff from Daniel Startzman, provided the jury shall further find that the said plaintiff *can with reasonable convenience for the necessary extension and addition to its yards aforesaid, use the aforesaid lands* spoken of by the witnesses as the Crawford farm

and the Daniel Startzman lands instead of the land described in the petition filed in this case, for such addition."

In passing upon this prayer, it is not necessary for us to determine whether the law is properly stated therein, for should it be properly stated, and we are not to be understood as saying that it is, there is nothing in the evidence tending to show that the plaintiff company can, with reasonable convenience, for the necessary extension and addition to its yards, use the lands in the prayer mentioned as belonging to said company. The evidence discloses that the Crawford farm, as well as a part of the Startzman land, is the property of the plaintiff, yet there is no evidence whatever as to the physical character and conformation of said land, or whether it was suitable or convenient for the purposes set forth in the petition. Two of the employees of the company were upon the stand and the fact of the ownership of this property by the plaintiff company was elicited from them, yet no inquiry was made on the part of the defendants as to the physical character of this land, or whether or not it was suitable for the purposes for which the land sought to be condemned is wanted, or whether it could be conveniently used for such purposes. There is no evidence in the record tending to show the existence of the facts which, by this prayer, are left to the jury to find. It was, however, stated by one of the employees of the company that if the road or right of way was moved to the South of the proposed railroad, it would be crowded into more tracks, and this they wished to avoid.

It follows from what we have said that the judgment of the lower Court should be affirmed.

> *Judgment affirmed as per curiam filed, with costs in this Court to the appellee, the costs in the lower Court to be paid by the appellees, as provided for by the statute.*