2. SAME—STATE MUST PROCEED IN ACCORDANCE WITH CONSTITU-
TIONAL AND STATUTORY PROVISIONS.
    The State, as well as every other agency which utilizes the power of eminent domain in acquiring private property, must proceed in accordance with the constitutional limitations and with the provisions of the statutes in so far as they do not contravene the Constitution.

3. SAME — NECESSITY AND COMPENSATION MUST BE SETTLED BY
JUDICIAL DETERMINATION.
    Under the Constitution (Art. 13, § 1), both the question of the necessity for taking private property and the compensation to be awarded therefor when controverted must be settled by a judicial determination.

4. SAME—HEARING BEFORE STATE HIGHWAY COMMISSIONER WITH
REVIEW BY CERTIORARI CONSTITUTE JUDICIAL DETERMINATION.

The hearing before the State highway commissioner, in
proceedings to take private property for public highway
purposes, provided by Act No. 92, Pub. Acts 1927, together
with the provision for review thereof upon certiorari, af-
fords the property owner an opportunity to have a judicial
determination of his rights in compliance with the con-
stitutional requirement.

5. SAME—STATE HIGHWAY COMMISSIONER'S INTEREST IN DISCHARG-
ING OFFICIAL DUTIES NOT A PERSONAL ONE.

The State highway commissioner, whose only interest in
securing a right of way for a public highway is that of
a public official desirous of faithfully discharging the duties
of his office, has no such personal interest as disqualifies
him from acting in a judicial capacity in proceedings to
take private property for said purpose, especially in de-
termining the necessity therefor, as provided by Act No.
215, Pub. Acts 1925, and Acts Nos. 92 and 340, Pub. Acts
1927, because he may have secured part of the right of
way by purchase.

6. SAME — CONSTITUTIONAL LAW — TAKING LAND FOR BENEFIT OF
PRIVATE INTERESTS.

Act No. 340, Pub. Acts 1927, providing for the purchase or
condemnation of a new right of way to be transferred
by the State to a railroad company in exchange for a
portion of its present roadbed to be used for highway
purposes, is not unconstitutional as authorizing the taking
of private lands for the benefit of other private interests
without due process of law and without just compensation,
although the owners are thereby deprived of the right to
a trial by jury they would have under the railroad act
(2 Comp. Laws 1915, §§ 8232-8333) had the railroad com-
pany condemned the land, since under the Constitution
(Art. 13, § 2), an owner whose land is taken for a State
project is not entitled to a jury trial, and his rights are
fully protected by a hearing before the State highway com-
missioner as to necessity, and for an assessment of dam-
ages by three court commissioners (Act No. 352, Pub. Acts
1925, § 7).

7. SAME—CONDEMNING LAND TO IMPROVE PUBLIC HIGHWAY—RE-
LOCATING RAILROAD RIGHT OF WAY.

Where part of the roadbed of a railroad was needed in

order to widen and improve a public highway, it was as much within the right and power of the State to direct that the power of eminent domain be exercised by the State highway commissioner for the purpose of relocating the railroad right of way as to delegate such authority to the railroad itself (Act No. 340, Pub. Acts 1927).

8. SAME—"JUST COMPENSATION" WITHIN CONSTITUTION.

Under article 13, § 2 of the Constitution, the "just compensation" for land taken for public purposes is such only as puts the injured party in as good condition as he would have been in if the injury had not been inflicted, and it includes the value of the land or the amount to which the value of the property from which it is taken is depreciated.

9. SAME—CONDEMNATION UNDER ONE ACT RATHER THAN ANOTHER NOT UNCONSTITUTIONAL WHERE JUST COMPENSATION PROVIDED FOR.

Since the compensation to be awarded under Act No. 340, Pub. Acts 1927, for land taken under proceedings instituted by the State highway commissioner for the purpose of relocating a railroad right of way as part of a plan for widening and improving a public highway, complies with the constitutional provision (Art. 13, § 2) for "just compensation," a landowner's claim that it is deprived of a constitutional right because its land is condemned under said act rather than under the railroad act (2 Comp. Laws 1915, § 8255) is without merit.

10. STATES — CONSTITUTIONAL LAW — USING STATE'S CREDIT FOR PRIVATE CORPORATION.

Act No. 340, Pub. Acts 1927, providing for the condemnation of a new right of way to be transferred by the State to a railroad company in exchange for a portion of its present right of way to be taken and used for highway purposes, and authorizing the State to create a revolving fund to be used in carrying out a contract between the State and the company whereby, in consideration of the company's agreement to surrender its special charter and convey to the State such portion of its right of way, the State agreed to secure a new right of way and construct a track thereon, with provision that the amount so expended by the State should be repaid within 15 years, does not violate the Constitution (Art. 10, § 12) prohibiting the use of the State's credit in aid of a private corporation.

11. STATUTES—HIGHWAYS NOT LOCAL MATTERS REQUIRING RATIFI-
CATION.

Act No. 340, Pub. Acts 1927, providing for the purchase or
condemnation of a new right of way to be transferred by
the State to a railroad company in exchange for a portion
of its roadbed required for highway purposes, is not local
legislation requiring ratification under the Constitution
(Art. 5, § 30), since the building and maintaining of public
highways are matters of concern to the State at large.

12. EMINENT DOMAIN—CERTIORARI—NECESSITY—ATTEMPT TO PUR-
CHASE.

On certiorari to review condemnation proceedings before
the State highway commissioner, objections that the testi-
mony did not show any existing necessity for taking the
land, or that the commissioner first attempted to secure
the land by purchase, as required by law, *held*, not sus-
tained by the return of the commissioner, which contains
a transcript of the testimony.

Certiorari by Fitzsimons & Galvin, Inc., to review
the determination of necessity of Frank F. Rogers,
State highway commissioner, for the taking of private
property for highway purposes.     Submitted June 8,
1928.     (Docket No. 100, Calendar No. 33,834.)     Writ
dismissed July 24, 1928.

*Atkinson, O'Brien & Clark*, for plaintiff.

*Wilber M. Brucker*, Attorney General, and *Kit F.
Clardy* and *Harry A. Metcalf*, Assistants Attorney
General, for defendant.

*H. R. Martin* and *H. V. Spike*, for intervener Detroit,
Grand Haven & Milwaukee Railway Co.

NORTH, J.     The Michigan State highway depart-
ment is engaged in the construction and improvement
of a State trunk line highway known as U. S. 10.     This
highway is also known as Woodward avenue, evidently
because it is an extension of Woodward avenue, one
of the principal thoroughfares of Detroit.     Incident·

to such construction and improvement, it will be increased to 200 feet in width and for this purpose it is necessary to acquire adjacent property.  For a distance of 9.1 miles the right of way of the Detroit, Grand Haven & Milwaukee Railway Company lies adjacent to this highway.  It became necessary to acquire this portion of the railroad right of way to carry out the plan of widening the public highway.  The Detroit, Grand Haven & Milwaukee Railway Company has operated under a franchise from the State of Michigan which restricts the power of the State to tax this railroad.  With a view both to acquiring so much of the railroad right of way as is needed for the highway improvement and also to securing the surrender of the special charter held by the railroad company and its reincorporation under the general railroad laws of Michigan, a proposed contract was negotiated with the railroad company.  This contract was embodied in Act No. 340, Pub. Acts 1927, by which its execution on behalf of the State was authorized.  Section 1 of this act provides:

"The governor of the State of Michigan is hereby authorized and empowered to negotiate with the Detroit, Grand Haven & Milwaukee Railway Company for a surrender of its special charter; its reincorporation under the general railroad laws of the State, and its taxation in accordance with the general laws of this State providing for the taxation of railroad companies; to acquire or cause to be acquired by the State highway commissioner, a new right of way for said railroad company approximately nine and one-tenth miles in length, in Oakland county, Michigan.  The governor, secretary of State and State highway commissioner are authorized and empowered to convey said new right of way to be acquired by the State of Michigan, on behalf of said State, to said railroad company; to make, execute and deliver proper deed or deeds of conveyance for the same in consideration of the release by said railroad company, and the transfer and conveyance by it to the State of Michigan of the right

of way now occupied by said railroad company between mile post number thirteen and mile post number twenty-two and one-tenth adjacent to trunk line number ten in Oakland county as provided in the form of contract annexed hereto and made a part hereof, so that the right of way of said trunk line highway number ten, known as Woodward avenue, may be widened to a width of two hundred feet for a distance of approximately nine and one-tenth miles in accordance with said contract.    The State highway commissioner is hereby authorized and empowered to acquire by purchase or condemnation, as a State project, a right of way not to exceed seventy feet in width along and adjacent and/or parallel to either or both sides of the new railroad right of way as a part of the proposed relocation and improvement where and when deemed advantageous and/or necessary by the State administrative board."

The contract contemplated by the statute was ultimately consummated.    For the purpose of carrying out the terms of the contract and thus securing so much of the railroad's present right of way as is needed to widen Woodward avenue, the State through its highway commissioner has undertaken to obtain by purchase or condemnation the new railroad right of way.    He has secured by purchase a large portion of the land needed, but has not been able to agree upon terms of purchase with certain owners of other lands required.

Act No. 215, Pub. Acts 1925, provides:

"SECTION 1. Whenever the line of any railroad or railway company is upon or adjacent to the right of way of a trunk line highway and such right of way or any part thereof, is necessary to be acquired for widening, straightening, altering or otherwise improving such highway, the State highway commissioner shall be authorized to enter into negotiations with such railroad or railway company for the purchase of said right of way, or of any part thereof, and to enter into an agreement with any such railroad or railway company to exchange other designated property for such

right of way, or for any part thereof, whenever such other designated property shall be acquired by him; and whenever any such agreement has been entered into, the said State highway commissioner shall be authorized and he is hereby empowered to acquire such other property by purchase or condemnation, and when acquiring to execute the necessary conveyances and releases thereof to such railroad or railway company for its use, and to take in exchange therefor the railroad or railway right of way or part thereof for such public highway purposes in accordance with such agreement.

"SEC. 2. The procedure that is, or may be, prescribed for condemnation proceedings instituted by boards of county road commissioners or the procedure that is, or may be, provided for the condemnation by State agencies and public corporations of private property for the use or benefit of the public, is hereby expressly made applicable to any proceeding brought by the State highway commissioner under the provisions of this act."

Section 2 above expressly authorizes procedure which is or may be provided for condemnation of private property by State agencies for the use and benefit of the public.   Adopting such procedure, the State highway commissioner gave notice of a hearing incident to the determination by him of the necessity for the proposed construction and improvement of Woodward avenue, and the necessity for taking certain parcels of land therefor.   Such a hearing was had at the time and place specified.   The plaintiff herein and other landowners whose rights are involved were present..   Testimony was taken in behalf of the State, but none was offered in behalf of the property owners. Based upon the hearing so held, the commissioner made a determination that it was necessary to construct and improve, and to complete the construction and improvement of this highway; and that it was necessary to take for that purpose the several parcels of land described, including the parcels belonging to the plain-

tiff herein. The validity of this determination is attacked and the proceeding had before the State highway commissioner has been brought here for review by writ of certiorari.

It has often been judicially announced that the power of eminent domain is an incident of and inherent in the sovereignty of the State; but the contention is rightly made by the plaintiff herein that since we have certain constitutional and statutory provisions which specify the methods and conditions of exercising this power, the State, as well as every other agency which utilizes this method of acquiring private property, must proceed in accordance with the constitutional limitations and with the provisions of the statutes in so far as they do not contravene the Constitution. The plaintiff asserts the procedure herein does not conform to this requirement and that both of the Public Acts of 1927 here involved (Act No. 92 and Act No. 340) are in violation of the provisions of the Constitution of this State, and that therefore the State highway commissioner's determination of necessity should be vacated.

Constitutionality of Act No. 92, Pub. Acts 1927. It is contended by the plaintiff that its property is being taken without a judicial determination of the necessity therefor. Act No. 92, Pub. Acts 1927, § 4, provides that the hearing as to the necessity of the proposed construction or improvement (which necessity is admitted by plaintiff in the instant case) and also as to the necessity of taking the particular property therefor shall be had before the State highway commissioner. It is further provided in the act (§ 27) that: "Any proceedings taken under the provisions of this act shall be subject to review upon certiorari." But it is asserted in plaintiff's brief:

"The determination of necessity by the State highway commissioner is not a judicial determination within the purview of sections 1 and 2 of article 13 of

the Constitution of Michigan, and section 4 of Act No. 92 is unconstitutional and void in so far as it provides for a hearing on the question of necessity and a determination thereof by the State highway commissioner."

Under the provision of our State Constitution (art. 13, § 1) both the question of the necessity for taking private property and the compensation to be awarded therefor when controverted must be settled by a judicial determination. *Hendershott* v. *Rogers,* 237 Mich. 338. But it has been determined recently in this State that the statutory hearing before the State highway commissioner together with the provision for a review of such hearing upon certiorari to a proper court affords the property owner an opportunity to have a judicial determination of his rights in compliance with the constitutional requirement. *Ziegel* v. *Genesee County Board of Road Com'rs,* 241 Mich. 161. Act No. 92, Pub. Acts 1927, therefore cannot be held to be unconstitutional on the theory or claim that it does not provide for a judicial determination of the question of necessity.

Incident to this phase of the case, it may be noted the plaintiff also asserts that if the State highway commissioner is held to be acting as a judicial officer in determining the question of necessity, then his personal interest in the issue submitted to him is such as renders his determination a nullity and results in taking the plaintiff's property without due process of law. We fail to find in this record any justification for plaintiff's contention that the State highway commissioner has a personal interest in this highway development. It is true, as stated in plaintiff's brief, that the commissioner has secured the right of way through other parcels by purchase, but it does not follow from this that he has such a personal interest as would disqualify him from acting incident to securing the right

of way through plaintiff's property. So far as is disclosed by this record, the commissioner's only interest in securing this right of way is that of a public official desirous of faithfully discharging the duties of his office. This is not such a personal interest as disqualifies one from acting in a judicial capacity.

Constitutionality of Act No. 340, Pub. Acts 1927. Act No. 340, Pub. Acts 1927, provides for the purchase or condemnation, if necessary, of a new right of way to be transferred by the State to the railroad company in exchange for a certain portion of its present roadbed. This has been termed substituted compensation. It involves the condemnation of plaintiff's land under the highway law when in fact it is to be used for a railroad right of way and not for a highway. Its taking for highway purposes is necessary only in an indirect or secondary sense. The plaintiff asserts that:

"The taking of the lands of petitioners for use as a railroad right of way in highway proceedings * * * will result in the taking of the properties of petitioners without due process of law and without just compensation."

The parcels of property sought to be acquired from the plaintiff are located in a highly restricted residential subdivision and distant substantially three-quarters of a mile from Woodward avenue, where the highway improvements will actually be made. The question is presented as to the power of the legislature to enact a law authorizing the State to obtain title to this property under the highway condemnation act when in fact the property sought to be so acquired is desired for the right of way of the railroad, and its acquisition is only indirectly necessary in widening and improving Woodward avenue. We have squarely before us the question as to whether under the highway act there can be what may be termed substituted con-

demnation or compensation by substitution. Few authorities in point can be found, but the question is passed upon and ably considered in an opinion rendered by Chief Justice Taft in *Brown* v. *United States*, 263 U. S. 78 (44 Sup. Ct. 92). It appears in this case that in 1921 congress passed an act (41 U. S. Stat. pp. 1367, 1403) giving

"authority in connection with the construction of American Falls Reservoir, to purchase or condemn and to improve suitable land for a town site to replace a portion of the town of American Falls which will be flooded by the reservoir, and to provide for the removal of buildings to such new site and to plat and to provide for appraisal of lots in such new town site and to exchange and convey such lots in full or part payment for property to be flooded by the reservoir and to sell for not less than the appraised valuation, any lots not used for such exchange." * * *

Certain lands were condemned under this act. It was urged in the *Brown Case* as in the instant case that such a statutory provision is unconstitutional in that it involves the taking of the property of one person for the purpose of transferring it to another. Chief Justice Taft thus disposes of this contention:

"The plaintiffs contend that the power of eminent domain does not extend to the taking of one man's property to sell it to another; that such an object cannot be regarded as for a public use of the property, and, without this, appropriation can have no constitutional validity. The district court held that the acquisition of the town site was so closely connected with the acquisition of the district to be flooded, and so necessary to the carrying out of the project, that the public use of the reservoir covered the taking of the town site. We concur in this view. * * *

"No one would say that a legislative act authorizing a railway company to build a railroad exceeds the constitutional limit by reason of a specific provision that the company may condemn land not only for the right of way, but also additional land adjacent thereto for use as borrow pits in making fills and embank-

ments, or for use as spoil banks or dumps for the earth excavated from tunnels and cuts. Such adjacent land would certainly be devoted to the public use for which the railway was being constructed. If so, then the purchase of a town site on which to put the people and buildings of a town that have been ousted to make the bed of a reservoir would seem to be equally within the constitutional warrant. The purchase of a site to which the buildings of the town can be moved and salvaged, and the dispossessed owners be given lots in exchange for their old ones, is a reasonable adaptation of proper means toward the end of the public use to which the reservoir is to be devoted. The transaction is not properly described as the condemnation of the land of one private owner to sell it to another. * * * A method of compensation by substitution would seem to be the best means of making the parties whole. The power of condemnation is necessary to such a substitution."

As a case of somewhat similar purport, see *Pitznogle* v. *Railway Co.*, 119 Md. 673 (87 Atl. 917, 46 L. R. A. [N. S.] 319). See, also, *Bradshaw* v. *Rogers*, 20 Johns. (N. Y.) 103; *Bigelow* v. *Draper*, 6 N. D. 152 (69 N. W. 570); 1 Nichols on Eminent Domain (2d Ed.), p. 171.

Having in mind that the primary purpose of Act No. 340, Pub. Acts 1927, was that of highway construction and improvement, and that the relocation of the railroad right of way was inseparably connected with the project, we hold that the working out of the whole problem was properly delegated by the legislature to the State highway department under the terms of the contract embodied in the statute. The undertaking was declared by the legislature to be a public necessity. See Act No. 340, Pub. Acts 1927, § 4. It is conceded in plaintiff's brief that the proposed highway improvement is a public necessity which requires the taking of the railroad's present right of way. Everything now sought to be done by the State highway commissioner is expressly authorized

by the act of the legislature.   The project is one of great importance to the people of the State; and presumably under Act No. 340, Pub. Acts 1927, and the terms of the contract embodied therein, the complicated situation involved in this highway construction and improvement is being worked out in a more practical, economical, and advantageous manner for all parties concerned than it otherwise could have been. The general method of procedure has the stamp of approval of high authority in the case of *Brown* v. *United States, supra;* and this court ought not to interfere with the consummation of the contract embodied in Act No. 340 unless it clearly contravenes constitutional provisions.

The specific objections raised by the plaintiff in its opposition to having its lands taken in this proceeding are these:

1. The plaintiff, whose property is being taken for a railroad right of way, will be deprived of having a determination by a jury of the necessity for taking its property and of the amount of compensation therefor; whereas a trial by jury could be had if this condemnation proceeding were conducted under the so-called railroad act instead of the highway law.   It is true that the railroad act (chap. 157, 2 Comp. Laws 1915) affords a jury trial but it does not follow that the legislature may not provide a proper procedure without trial by jury.   The present undertaking is a State project and as such clearly falls within the exception found in the State Constitution as to the right of a jury trial.   The constitutional provision is as follows:

"When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall

be prescribed by law: *Provided,* That the foregoing provision shall not be construed to apply to the action of commissioners of highways or road commissioners in the official discharge of their duties." Art. 13, § 2.

"In the absence of a special constitutional or statutory provision there is no right to trial by jury in condemnation proceedings. Due process of law does not require the damages in such proceedings to be assessed by a jury." 20 Cyc. p. 999.

The highway act under which the commissioner is here proceeding provides for a determination of necessity by a hearing before the State highway commissioner, and for an assessment of damages by three court commissioners. Act No. 352, Pub. Acts 1925, § 7. This, we think, fully protects the plaintiff's constitutional rights.

2. It is asserted by the plaintiff that its property is being taken for the use and benefit of another or of other private interests, and that in this its constitutional rights are violated. This position is not tenable. The State is taking this land for use as a railroad right of way, the procuring of which is necessitated by the construction and improvement of a State trunk line highway. This is a taking for a public and not for a private use. The use of this property as a railroad right of way, entirely apart from the State highway need, is a public use. Under no other theory could the right to exercise the power of eminent domain be delegated by the State to railroad companies. It has long been settled in this State that taking land for a railroad right of way is a taking for a public purpose. *Swan* v. *Williams,* 2 Mich. 427; *Grand Rapids, etc., R. Co.* v. *Weiden,* 70 Mich. 390. Therefore it can not be said that the power of eminent domain is here being used for the purpose of condemning the property of one person for the private use of another.

3. The plaintiff also urges that the requirements of the State for constructing this highway would have been satisfied by the mere condemnation of the present right of way of the railroad company; and since the railroad has the power to condemn land, there exists no necessity for the procurement by the State of another right of way for the railroad.   In taking this position, the plaintiff overlooks the fact that the need of acquiring plaintiff's land for a new railroad right of way arose incident to and as a necessary part of the construction of a State highway, and that it is therefore within the right and power of the State under the legislative enactment (Act No. 340, Pub. Acts 1927) to relocate the railroad.   Under the circumstances of this case, it is as much within the right of the State to direct that the power of eminent domain be exercised by the State highway commissioner in obtaining this new railroad right of way as it is within the State's right to delegate such authority to the railroad itself.   The State has seen fit by appropriate legislation to empower the commissioner to act, and we fail to find a lack of authority for so doing or that the plaintiff's rights are thereby invaded.

4. The plaintiff strenuously insists that it will be unable to recover full compensation for damage to its property if it is taken for railroad purposes under the highway act because the measure of damage provided in the highway law is less than that specified in chapter 157, 2 Comp. Laws 1915, which contains the general provision for condemnation of railroad rights of way.   That one legislative act may contain a different provision than is found in another as to the measure of damages is not controlling.   The test is whether the provision in the act falls short of the constitutional requirement for just compensation. A comparison of the provisions of these two acts relative to the damages to be awarded discloses a close

similarity with the exception of the provisions for payment of costs and an attorney fee required by the railroad act. The provision in the latter act as to damages (2 Comp. Laws 1915, § 8255) is that the commissioners (or jury) "shall ascertain and determine the damages or compensation which ought justly to be made." The highway law provision (Act No. 352, Pub. Acts 1925, § 16) is:—"The court commissioners shall appraise the damages to be paid as compensation," etc. It is true that the highway law of this State provides that in fixing compensation the benefits accruing to the property owner are offset against the damage awarded. See Act No. 352, Pub. Acts 1925, § 18; *In re Macomb County Board of County Road Com'rs,* 242 Mich. 239. But it does not follow from this that in a proceeding wherein the State highway commissioner is seeking to secure a right of way, the damage to be awarded the property owner will be anything short of the "just compensation" provided in section 2 of art. 13 of the Constitution. In the present case, as in an ordinary proceeding for condemning a right of way for a railroad, it will be the duty of the commissioners "to compensate the owner for what his landed interest will suffer from the use proposed to be made of it by the railroad company." *Barnes* v. *Railway Co.,* 65 Mich. 251. Adequate compensation is such only as puts the injured party in as good condition as he would have been in if the injury had not been inflicted. It includes the value of the land, or the amount to which the value of the property from which it is taken is depreciated. *Grand Rapids, etc., R. Co.* v. *Heisel,* 47 Mich. 393. There is no provision in our statutes for offsetting benefits against damages incident to taking land for a railroad right of way; and in the absence of an express statutory provision such a deduction cannot be made. *Detroit, etc., R. Co.* v. *National Bank,* 196 Mich. 660; *State*

*Highway Commissioner* v. *Breisacher*, 231 Mich. 317. With this construction placed upon the highway act, it is not subject to the objection that it fails to provide adequate compensation for the property owner and is therefore unconstitutional.   Nor does it leave force to plaintiff's contention that since it is here sought to condemn a railroad right of way the procedure must be under and in accordance with the general railroad act rather than under the highway law.   By Act No. 340, Pub. Acts 1927, § 4, the State highway commissioner is authorized and empowered to secure this right of way "in accordance with the general laws of the State."   The present proceeding instituted by him is "in accordance with the general laws of the State;" and if those laws are properly administered plaintiff's rights as to just compensation will be fully respected. A reference to the railroad act will disclose several reasons why it would be impossible for the State highway commissioner to file a petition thereunder.   For example, that statute (2 Comp. Laws 1915, § 8252) requires the petition to be in the name of the railroad company, and to be signed and sworn to by a director or other representative of the railroad company.   We are of the opinion that the legislature intended that the State highway commissioner, in carrying into effect the provisions of Act No. 340, Pub. Acts 1927, should proceed as far as possible in conformity with the provisions of the highway condemnation law; and that by his so doing the plaintiff will not be deprived of property without just compensation, or without due process of law.

Other objections to Act No. 340, as to its constitutionality, are that it provides for the use of the State's credit by the Detroit, Grand Haven & Milwaukee Railway Company; and that the act is local in its application and is invalid because it was not submitted to local ratification as required by section 30, art. 5, of the State Constitution.

Article 10, § 12, of the State Constitution provides:

"The credit of the State shall not be granted to nor in aid of any person, association or corporation, public or private."

The claim that the use of the State's credit is granted to the railroad company is based upon a provision in the contract embodied in Act No. 340, Pub. Acts 1927, by which the State undertakes to create a revolving fund to be used in carrying out the terms of the contract whereby in consideration of an agreement by the railroad company to surrender its special charter and to convey to the State from its present right of way the land needed to widen Woodward avenue for a distance of 9.1 miles, the State has agreed to bear the expense of securing a new right of way for the railroad company and of constructing a single track thereon, but with the provision and agreement that within 15 years the total amount of money so expended by the State is to be repaid in fixed annual installments. We think this cannot be construed to be a granting of the use of the State's credit to the railroad company, but instead it is the consummation of a contract by and between the parties whereby the State will secure the land necessary for widening Woodward avenue and the surrender of the railroad's special charter. The consideration for this is the undertaking and agreement on the part of the State as set forth in the contract. The good faith of the undertaking is in no way assailed. It has to do with the legitimate administration of State affairs, and neither it nor the act in which it is embodied is subject to the objection that it is an attempt on the part of the State to grant the use of its credit to the railroad company. Nor can Act No. 340 be successfully attacked on the theory that it is a local act. As hereinbefore noted, the primary purpose of that act is the construction and improvement of a State trunk line highway. We have recently

held that building and maintaining public highways are matters of concern to the State at large and that the legislation providing therefor is not local in character.    *Moreton* v. *Secretary of State,* 240 Mich. 584, citing *Attorney General* v. *Bruce,* 213 Mich. 532; *Loomis* v. *Rogers,* 197 Mich. 265.

The only other objections raised by plaintiff are that the testimony taken before the State highway commissioner did not show any necessity exists for taking its land; and that the testimony did not show that the commissioner attempted to secure by purchase a right of way across plaintiff's lands before giving notice of the hearing as is required by law.    The return of the commissioner to the writ issued, together with the transcript of the testimony taken before the commissioner and embodied in his return, establishes quite conclusively that neither of these objections is well founded.    The undisputed proof supports the commissioner's finding of a necessity for taking this property, and it appears from the record in the case that an attempt was made to secure the right of way by purchase.    Further, it is alleged in the petition filed by the officers of the plaintiff corporation that they do not reside in Oakland county where the land is located.    Under the statute the commissioner is authorized to proceed without first attempting to purchase land which is owned by persons who are nonresidents of the county wherein the land is located.    See Act No. 92, Pub. Acts 1927, § 4.    This same section also provides that after the commissioner has made his determination of necessity, his declaration that he has been unable to agree with the owners for the purchase and his determination as to necessity shall not be questioned.    Neither of the objections last above considered is meritorious.

Many cases cited in plaintiff's brief are distinguishable from the instant case in that the right of eminent

domain was there attempted to be exercised to accomplish a purpose not authorized by law; but here we have a case wherein the State highway commissioner has been specifically authorized and empowered by legislative enactment to do exactly that which he seeks to accomplish in this proceeding. Such legislation can and should be sustained because the relocation of the railroad right of way has been rendered necessary by and incident to the highway improvement; and the property sought is being taken for public use. We do not find that the statutes involved offend against the Constitution or that there is any irregularity in the proceeding conducted by the State highway commissioner.

The relief sought in the petition must be denied and the petition dismissed, with costs to the defendant.

FEAD, C. J., and WIEST, CLARK, and SHARPE, JJ., concurred. FELLOWS, McDONALD, and POTTER, JJ., did not sit.