**DOHANY v. ROGERS, State Highway Com'r, et al. (two cases).**

**WALTON et al. v. DILLMAN, State Highway Com'r, et al.**

District Court, E. D. Michigan, S. D. June 24, 1929.

Nos. 3118, 3122, 3236.

Dohany & Dohany, Atkinson, O'Brien & Clark, and Raymond M. Shock, all of Detroit, Mich., for plaintiffs.

Wilber M. Brucker, Atty. Gen., Kit F. Clardy, Asst. Atty. Gen., and H. R. Martin and Victor Spike, both of Detroit, Mich., for defendants.

Before HICKENLOOPER, Circuit Judge, and TUTTLE and MOINET, District Judges.

TUTTLE, District Judge. These causes, which involve the same questions and are being tried together, are before this court, constituted and sitting pursuant to the provisions of section 380 of title 28 of the United States Code (section 266 of the Judicial Code), on an application for an interlocutory injunction to restrain the state highway commissioner of the state of Michigan from prosecuting certain condemnation proceedings in the courts of said state in the enforcement of certain statutes of such state, on the ground that such statutes, as sought to be so enforced, deprive the plaintiffs of their property without due process of law and deny to them the equal protection of the laws, in violation of the Fourteenth Amendment to the Federal Constitution.

The condemnation proceedings in question were instituted by the state of Michigan for the purpose of taking, by right of eminent domain, certain land of the plaintiffs which was deemed, and had been formally declared, by the Legislature and other proper officials of said state, to be required for public use in the necessary widening and improvement of the main public state trunk highway connecting the cities of Detroit and Pontiac in Michigan. In the widening of such highway, it became necessary for the state to provide for the removal and relocation of certain railroad tracks of the defendant Detroit, Grand Haven & Milwaukee Railway Company immediately adjoining said highway and located on land needed for such widening. Thereupon, the state decided to acquire, by condemnation, other land near said tracks and to convey such land to said

railway company in exchange for its land so needed, and the railway agreed to this substitution of a new right of way for the old, the removal of its tracks to such new right of way, and the conveyance of its former right of way to the state for the highway purposes so desired. By Act No. 340 of the Public Acts of Michigan of 1927, the Michigan Legislature declared this project to be a public necessity, authorized the state highway commissioner to acquire, "on behalf of the state by purchase or condemnation, in accordance with the general laws of the State of Michigan," the land required for this purpose, and provided for the conveyance of such land, when so acquired, to the railway in exchange for the right of way which it was to convey to the state, all as part of the highway improvement project in question.

Act No. 215 of the Michigan Public Acts of 1925 provides that whenever the line of any railway is upon or adjacent to a trunk line highway and its acquisition is necessary for widening or otherwise improving such highway, the state highway commissioner is authorized to agree with such railway for the exchange of its right of way for other property, and, after such agreement, "to acquire such other property by purchase or condemnation, and when acquired" to make such exchange accordingly "for such public highway purposes." Act No. 352 of the Michigan Public Acts of 1925, as amended by Act No. 92 of the Public Acts of 1927, prescribes the procedure applicable to the condemnation proceedings in such a case, including the manner of making just compensation for property so condemned.

The state, through its state highway commissioner, having instituted, in the proper state courts, the condemnation proceedings provided by these statutes, property owners affected thereby opposed such proceedings, raising various objections to the validity thereof and urging that such statutes violated several provisions of the Constitution of Michigan. The Michigan Supreme Court, in the case of Fitzsimons & Galvin, Inc., v. Rogers, 243 Mich. 649, 220 N. W. 881, in a well-reasoned opinion, which described the general situation also presented here, considered and discussed those objections and overruled them, holding that the statutes in question were not contrary to the state Constitution and that they authorized the condemnation proceedings taken. Although the constitutional objections so overruled are also urged here, this court of course, under familiar law, should accept and follow that decision of the state court of last resort as sustaining the validity under the Michigan Constitution of these statutes and their applicability to these proceedings. Rindge Co. v. Los Angeles County, 262 U. S. 700, 43 S. Ct. 689, 67 L. Ed. 1186.

I have carefully considered the various grounds on which these state statutes are asserted to be in contravention of the Federal Constitution, but find no merit in any of the contentions urged.

It is claimed by the plaintiffs that, because their land, if taken as sought, will itself be used not by the state as a part of the proposed new highway, but by a railway company as a part of its right of way, such land is being taken not for highway purposes, within the meaning of the law, but for railroad purposes, and that therefore it cannot be condemned under the so-called highway condemnation statutes of Michigan, as the state is seeking to do, but only under the railroad condemnation statutes of the state, and as these railroad statutes, it is said by the plaintiffs, afford a more liberal and favorable measure of damages to the owners of property taken thereunder, the plaintiffs insist that in the present case they are discriminated against, as compared with the owners of property condemned by railroad companies in other cases, and that consequently they are being denied the equal protection of the laws guaranteed to them by the Federal Constitution. I cannot agree with this argument, which, I think, is completely answered and overruled by the decision of the United States Supreme Court in Brown v. United States, 263 U. S. 78, 44 S. Ct. 92, 68 L. Ed. 171. Under the principle applied in that case, I am satisfied that in view of the object here sought to be accomplished by the state, the taking of this land must be regarded as a reasonable adaptation of proper means for the acquisition of this land for highway purposes, and that the fact that such land is not to be physically used as a part of the highway thus sought to be constructed does not change the real nature of the transaction, which is the taking of land for the widening of a public highway. The same principle was announced and applied, under substantially similar circumstances, in Pitznogle v. Western Maryland Railroad Co., 119 Md. 673, 87 A. 917, 46 L. R. A. (N. S.) 319, and Rogers v. Bradshaw, 20 Johns. (N. Y.) 735. This condemnation proceeding is brought by the state, in its own interest and for its own public purposes, and not by, nor on behalf of, a railroad company; and its object is the condemnation and taking of property for the purpose of improving a public highway and

not for any railroad purpose. There is therefore no sound basis for this contention that the proceedings here sought to be enjoined will result in either the denial of the equal protection of the laws or the deprivation of property without due process of law.

The Constitution of Michigan permits, and the statutes of the state provide, a different procedure as between condemnation proceedings brought by the state and those brought by railroads or other public corporations, although such Constitution requires, in all cases, that "private property shall not be taken * * * for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law." Const. art. 13, § 1. In view of this broad guaranty of just compensation, which is observed and fulfilled by the statutes in question, there is nothing in the Federal Constitution which prevented the state of Michigan from the exercise of its own discretion and judgment in the adoption of the particular methods of enforcement of the right of eminent domain prescribed in the statutes here involved. A. Backus, Jr., & Sons v. Fort Street Union Depot Co., 169 U. S. 557, 18 S. Ct. 445, 42 L. Ed. 853; Joslin Mfg. Co. v. Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. Ed. 1167; Rindge Co. v. Los Angeles County, supra.

I have examined with care all of the reasons and arguments presented by the plaintiffs in support of their claim that their rights are being invaded in respect to the matters urged, and am clearly of the opinion that such claim is without merit, and that the temporary restraining order now in effect must be dissolved, the application for an interlocutory injunction denied, and the bill dismissed.

HICKENLOOPER, Circuit Judge. I concur in the result reached by the majority of the court, but cannot concur wholly in the reasoning whereby that result is attained. Under the circumstances of this case, I feel that it must be conceded that the plaintiffs' property is being appropriated for railway purposes and not for a highway. It is being taken under the provisions of Act 340 of 1927, and this act expressly provides for an appropriation for railway right of way. This is recognized by the Supreme Court of Michigan in the case of Johnstone v. D., G. H. & M. Ry. Co. et al., 245 Mich. 65, 222 N. W. 325, where the court says: "In determining plaintiffs' compensation, the benefits to their property, if any, arising from the construction and operation of the railroad, are proper to be considered." In Fitzsimons & Galvin, Inc., v. Rogers, State Highway Commissioner, 243 Mich. 649, 220 N. W. 881, the same court had said: "The State is taking this land for use as a railroad right of way, the procuring of which is necessitated by the construction and improvement of a state trunk line highway." All parties concede that it is to railway uses to which the land is to be put.

Nor do I think that the authorities upon which the opinion of the majority is based (Brown v. U. S., 263 U. S. 78, 44 S. Ct. 92, 68 L. Ed. 171; Pitznogle v. Western Md. R. R. Co., 119 Md. 673, 87 A. 917, 46 L. R. A. [N. S.] 319) go further than to sustain the contention that the underlying need for relocating the railroad (analogous to the necessity for procuring the town site in the Brown Case and the private road in the Pitznogle Case) furnishes the element of public necessity and makes the appropriation one "for a public use" as distinguished from a taking for private use. Were the railway simply moved over adjacent the highway only, for sufficient distance to permit both the widening of the highway and the continued maintenance of the railway in the vicinity and substantially in its former location, there would be more reason to denominate the taking as one for highway purposes. But here the railway is being entirely relocated at some very considerable distance from its former location, over more than nine miles of its length, through lands of very different character and with additional appropriation for yards and buildings. To say that, because a general highway improvement gives rise to the desirability or even necessity of so relocating the railway, the property needed is being taken for highway purposes, is to fail to distinguish between the impelling reason for condemnation and the use and purpose for which the lands are in fact taken and to which they will in fact be put.

As stated, the condemnation proceedings are brought under Act No. 340 of 1927, which authorizes the condemnation of property for this particular project "in accordance with the general laws of the State of Michigan." The Supreme Court of Michigan has held this law constitutional under the state Constitution and construed it as permitting the state highway commissioner to proceed under the Highway Condemnation Acts (Act No. 352 of 1925 and Act No. 92 of 1927) rather than the Railway Condemnation Statutes (sections 8249–8257, inclusive, Compiled Laws of 1915). This court is bound by the

decision of the Supreme Court of the State upon these two points of compliance with the provisions of the state Constitution and the scope or construction to be given the act.

It is the contention of the plaintiffs that by invoking the procedure provided for condemnation of land for highway purposes, but without negotiation for the purchase of the property before commencing the proceedings (declared jurisdictional in respect to both highway and railway condemnations in Re Rogers, 243 Mich. 517, 220 N. W. 808), the state highway commissioner is administratively depriving the plaintiff landowners of the equal protection of the laws, in that the land is being taken for railway purposes and plaintiffs are being denied rights given to all other landowners whose property is taken for railway purposes under the general Railway Condemnation Statutes. The rights of which they claim to be so deprived are: (a) The right to jury trial both as to necessity and compensation; (b) the right to possession of their property until damages have been finally assessed and paid; (c) the right to consequential damages; (d) the right to damages without deduction of benefits; (e) the right to attorney's fees and expenses in addition to damages; and (f) the right to review by appeal instead of by restricted writ of certiorari.

The precise question is thus whether, by the adoption of the course pursued, the plaintiffs are being subjected to discriminatory treatment and are being deprived of any substantial and substantive rights, which are given as of right to others in like situation, viz., others whose property is being appropriated for public purposes, not necessarily for railway purposes. In this probably lies the fallacy of plaintiffs' position. It is now established beyond controversy that a state law, valid on its face, may be administered in an unconstitutional manner so as to justify the intervention of a court of equity. Yick Wo v. Hopkins, 118 U. S. 373, 6 S. Ct. 1064, 30 L. Ed. 220; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Greene v. Louisville, etc., R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. It is also equally well established that the guaranty of equal protection of the laws means the protection of equal laws, operating without discrimination upon all under the same or similar circumstances. Southern R. Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Atchison, T. & S. F. R. Co. v. Vosburg, 238 U. S. 56, 35 S. Ct. 675, 59 L. Ed. 1119, L. R. A. 1915E, 953;

Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375; Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165. The decisive question arises under the manner of classification of the plaintiffs in determining whether they are receiving equality of treatment.

The Legislature of the State of Michigan has enacted separate laws for the condemnation of property for almost all of the purposes for which such condemnation may be had. The Legislature has now enacted still another general law (Act No. 215 of 1925) and a special act (Act No. 340 of 1927) covering the situation where a railway is to be relocated as part of a project for highway improvement. The Supreme Court of Michigan has construed these last-mentioned acts and defined their meaning and scope. The plaintiffs do not contend that they are being deprived of their property without due process of law, but only that they have the right to benefit by the procedure and remedial provisions of the Railway Condemnation Statutes, as distinguished from the other statutes for appropriation of property which the state Supreme Court has held were to be read into Act Nos. 215 and 340.

The contentions of discrimination and unequal protection are of several classifications. The alleged wrongs, by denial of the right to consequential damages and by discrimination in the assertion of the right to deduct benefits, are more fanciful than real. The state courts have held that consequential damage and deduction of benefits are proper subjects for consideration only in that both are inseparable from a determination of the true damages suffered. The plaintiffs are entitled to no financial advantage, but only to just compensation (cf. McCoy v. Union Elevated R. Co., 247 U. S. 354, 38 S. Ct. 504, 62 L. Ed. 1156; Bauman v. Ross, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270), and there is no reason to assume that the damages awarded will not be fully compensatory. In this respect we cannot say that the action of the state will be discriminatory.

It was suggested by the oral argument, but not raised in the briefs, that the plaintiffs in the Dohany cases were also the owners of lands abutting the railroad right of way at its present location adjacent the highway, and were now threatened with a deduction of the benefits which would accrue to that land by reason of the removal of the railroad and to their other lands, remote from the highway, by reason of increased means of access to the main artery of travel to Detroit. To the extent that the property is benefited by

the construction of the railway, it is manifest the extent of damage is affected; but such benefits only as pertain to such construction may be considered, not such as arise from the *removal* of the railway from another location, although it there also abuts land owned by the plaintiffs. Such latter benefits are not germane to the subject-matter of the litigation, which relates solely to the appropriation, and the consideration given benefits in fixing the amount of damage arising from such appropriation and the construction of the railway should exclude those benefits which are remote rather than direct. But there is no substantial reason to believe that such indirect, collateral, and incidental benefits will in fact be deducted in the absence of any specific legislation authorizing it; and even if threatened there is even less reason to believe that the plaintiffs will not secure wholly adequate relief at law against the contention. The remedy at law being adequate, a court of equity should not take jurisdiction.

The contentions of the right to jury trial, instead of a hearing before a properly constituted, constitutional tribunal of three commissioners, to less limited appeal privileges, the wholly statutory right to negotiation (held not to be provided for under Act Nos. 215 and 340), and the legislative determination of necessity (held not to violate the State Constitution), all pertain to matters of procedure in which plaintiffs have no vested right to a continuance of past practices. "Each succeeding legislature may establish a different one, providing only that in each is preserved the essential elements of protection." Backus v. Fort St. Union Depot Co., 169 U. S. 557, 570, 18 S. Ct. 445, 450 (42 L. Ed. 853). When such essential elements are so preserved, the most obvious being the right to a hearing before a proper tribunal, the determination of proper compensation, and the payment or securing of payment of the compensation so determined, the property owner is deprived of no right to which he is entitled under the Federal Constitution.

The alleged discrimination by excluding attorney's fees and expenses from the measure of damage in this case, while making such allowances in other cases of condemnation for railway purposes, is much in the same category as matters of procedure. The right to attorney's fees and expenses, not usually forming part of the costs, is not a fundamental right. When allowed, the allowance is rather a matter of favor than of right. Up-

on this contention we consider the case of Joslin Mfg. Co. v. City of Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. Ed. 1167, as conclusive and binding upon us. The plaintiffs are not denied a "right" given to others, but complain because they are not also accorded a "gratuity" in some cases extended to others.

This leaves only the question of possession of the property until compensation has in fact been paid. The Constitution of Michigan provides that property shall not be taken for public use without just compensation "being first made or secured." Article 13, § 1. The public necessity for appropriation being established, it is entirely consistent with this provision and with the Federal Constitution to provide that immediate possession be taken and the public need and improvement be not delayed over a period of protracted litigation. Backus v. Union Depot Co., supra.

In substance, while differing from the conclusion of the majority of the statutory court that this is a taking "for highway purposes," I am of the opinion that by Act Nos. 215 and 340 the state Legislature has provided an individual procedure and method for the appropriation of property for railroad purposes to be followed in those cases, and those only, in which the primary necessity arises from a highway improvement and in which the land taken is to be used for exchange purposes. In providing this distinct procedure, there is no violation of the due process clause, the plaintiffs are deprived of no fundamental rights, and I am unable to say that, the initial or motivating cause being in the highway improvement, the desirability of centralizing the control in the highway commissioner so that the whole work may proceed as a single project, the general diversity of separate laws for the appropriation of property in Michigan for the several different purposes, and the rather distinct and unique situation here present, do not afford reasonable ground for separate classification. The law would seem to go no further than the need, as the Legislature saw it, and thus to afford no ground for claim of discrimination. Compare Barrett v. Indiana, 229 U. S. 26, 33 S. Ct. 692, 57 L. Ed. 1050; Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224, 34 S. Ct. 856, 58 L. Ed. 1288; Perley v. North Carolina, 249 U. S. 510, 39 S. Ct. 357, 63 L. Ed. 735.

I concur in the dismissal of the plaintiffs' bills.