CITY OF GREENWOOD *v.* GWIN *et al.*\*

(En Banc. March 4, 1929.)

[121 So. 160. No. 27649.]

*Corpus Juris-Cyc References: Eminent Domain, 20CJ, section 88, p. 599, n. 77; section 111, p. 624, n. 83; section 112, p. 627, n. 96; p. 628, n. 97; section 364, p. 953, n. 79; On right to condemn property previously condemned or purchased for public use, but which is not actually so used, see annotation in 24 L. R. A. (N. S.) 383; 10 R. C. L. 198; 4 R. C. L. Supp. 657.

*Alfred Stoner* and *A. H. Bell,* for appellant.

*Chapman, Moody & Johnson, Simon Rosenthal* and *Means Johnston,* for appellees.

530

Argued orally by *A. H. Bell* and *Alfred Stoner*, for appellant, and *C. C. Moody* and *Means Johnston*, f appellees.

ANDERSON, J. Appellees filed their bill in the chancery court of Leflore county against appellant to enjoin the latter from the further prosecution of an eminent domain proceeding instituted under the Code chapter on "Eminent Domain," by which proceeding appellant sought to condemn a joint right with appellees to construct and maintain a waterworks and sewerage system under the streets, alleys, and avenues of the Boulevard Addition to appellant. A temporary injunction was issued in accordance with the prayer of the bill. Appellant answered the bill, and moved to dissolve the injunction on the pleadings and exhibits thereto, which motion was overruled. From that decree appellant prosecutes this appeal.

This is the second appearance of this case here. *Gwin et al. v. City of Greenwood*, 150 Miss. 656, 115 So. 890. The case as developed up to the time of that appeal is fully set out in the opinion therein. It is only necessary, therefore, to state the case as made after it was sent back to the chancery court on remand of this court, but, in order to get the full significance of the decision now rendered, the former opinion should be considered.

After its remand, appellant's mayor and commissioners passed the following order:

"This day came on for hearing the question of the extension of the water mains, laterals, sewerage system and the placing of fire plugs in the Boulevard Addition to the city of Greenwood, Leflore county, Mississippi, by the city of Greenwood, and it appearing that S. L. Gwin has certain rights in the streets, alleys and avenues of said Boulevard addition, and that he claims the exclusive right to lay and maintain the said water pipes, mains, laterals and sewerage in the said streets, alleys and avenues of the said Boulevard Addition as is shown by note of reservation on map of the said Boulevard Addition, recorded in Book 2, Page 19, of the Records of Maps on file in the office of the clerk of the chancery court of

Leflore county, Mississippi; and it appearing to the council, after being duly advised in the premises that it is for the best interests of the city of Greenwood, and for the promotion of the public welfare that the said water mains, pipes and sewers be extended under and along the said streets, alleys and avenues of said Boulevard Addition to the city of Greenwood; and it appearing that the said S. L. Gwin, who claims the rights in the said avenue, alleys and streets, has heretofore made offers to convey to the city of Greenwood the right to lay and maintain said pipes, mains, laterals and sewers in the said streets, avenues and alleys, and that the consideration demanded for the said right to lay and maintain water pipes, mains, laterals and sewers and the placing of fire plugs under and along the said streets, avenues and alleys in said Boulevard Addition, should be condemned by eminent domain proceedings for public purposes.

"It is therefore ordered by the council of the city of Greenwood, composed of the mayor and commissioners, and being the governing body of said city of Greenwood, at this, its regular meeting, convened at the city hall, in the said city, its regular meeting place, that the city attorney be and he is hereby directed to condemn by eminent domain proceedings, the rights aforesaid, to the extent of allowing the said city to lay water pipes, mains, laterals and sewers under the surface of all of the said streets, alleys and avenues in the said Boulevard Addition so as to use the said right in the said streets, alleys and avenues jointly with the said S. L. Gwin, and to place fire plugs as hereinafter mentioned; and for this purpose of said condemnation of the easement under said streets, alleys and avenues; but such space so condemned to be filled by one or more pipes or sewers, to be laid in more than one place under the said streets, avenues and alleys in the said Boulevard Addition, but not so as to impair the usefulness in or about the carrying of water

or sewerage of such pipes now or hereafter to be laid under said streets, alleys and avenues by the said S. L. Gwin.

"The city attorney is also directed to condemn the right to establish, place and maintain fire plugs, one within ten feet of every corner of the streets, avenues and alleys of the said Boulevard Addition, if necessary, said plugs not to exceed two feet in diameter and to extend above the surface of said streets, alleys and avenues to a height not exceeding four feet, and in such place or places as will not interfere with the free passage or use of said streets, alleys and avenues, nor with the use and location of the fire plugs that are now, or may be hereafter established by the said S. L. Gwin in the said Boulevard addition to the city of Greenwood."

Appellant, proceeding under the Code chapter on "Eminent Domain," sections 1854 to 1877, inclusive, Code 1906 (Hemingway's 1927 Code, sections 1560 to 1583, inclusive), sought to carry out the order and to that end filed an application with the clerk of the circuit court, which follows:

"That the said right and easement to be condemned in accordance with the said order attached hereto as Exhibit "A" is a right and easement under all of the said streets, boulevards, alleys and avenues, not to exceed an aggregate of ten feet in diameter under each boulevard, street, avenue and alley by the length of each of the said streets, boulevards, alleys and avenues, and the said space to be filled by one or more pipes or sewers to be laid in one or more places, the total space to be occupied by the said water pipes, mains, laterals, and sewers in any one street, avenue, boulevard and alley not to exceed ten feet in diameter, by the length of said boulevards, streets, avenues and alleys respectively, but not so as to impair the usefulness in or about the carrying and conveying of water or sewerage of such pipes, mains, laterals and sewers now laid or hereafter to be laid under

said streets, boulevards, alleys and avenues, by the said defendant, S. L. Gwin.

"Also the right to establish, place and maintain fire plugs one within ten feet of each corner of the streets, boulevards, avenues and alleys of the said Boulevard Addition to North Greenwood, said plugs not to exceed two feet in diameter and to extend above the surface of said boulevards, streets, alleys and avenues to a height not exceeding four feet and to be established and maintained in such place or places as will not interefer with the free and convenient passage or use of said streets, boulevards, avenues and alleys, nor with the use and location of the fire plugs that are now or may be hereafter erected and established by the said defendant, S. L. Gwin, in the said Boulevard Addition to North Greenwood.

"That the right and easement above described is necessary for the furnishing of adequate water supply and fire protection to the inhabitants of the said Boulevard Addition to North Greenwood as aforesaid."

The appellees had dedicated the streets, avenues, and alleys of appellant's Boulevard Addition to public use, but in the dedication reserved to themselves "the exclusive right to construct, maintain, and operate water, sewerage, electric light, gas, and street car lines and systems in all the alleys, streets, avenues, and boulevards." On the former appeal of this cause, the court held this reservation was valid, and that appellant could not take it from appellees except either by purchase or an eminent domain proceeding.

As shown above, appellant did not undertake to condemn appellees' entire right or easement to construct and maintain a waterworks and sewerage system in the streets, alleys, and avenues, but sought only to condemn a right equal to that of appellees, with the exception of a limitation set on the space to be occupied by its sewer

and water pipes of ten feet in diameter measured by the length of the streets, alleys, and avenues.

Appellant's position is that under the law it had the right to condemn only such a part of appellees' easement as the public necessity required, while appellees contend that their easement is of such a nature and character as that it is not susceptible of being shared equally with appellant; that the taking of a part of their easement by appellant will have the effect of destroying its entire value; and therefore appellant should be driven to an eminent domain proceeding by which it will acquire the exclusive right of establishing and maintaining a waterworks and sewerage system in the streets, alleys and avenues.

This question was not before the court on the former appeal, and therefore could not be, and was not, decided. It was stated in the opinion that appellant could only acquire appellees' exclusive easement by eminent domain proceeding or contract; but the court was not addressing itself to the question of whether appellant had the right to acquire less than the whole of appellees' easement. Appellant concedes that appellees' exclusive right is a property right, and that under section 17 of the Constitution could not be taken or damaged for public use except on due compensation being first made therefor. The question is whether appellant can take less than appellees' whole right. Appellant's mayor and commissioners declared in their order providing for the eminent domain proceeding that the public necessity only required the condemnation of an equal easement with that of appellees. Section 17 of the Constitution makes it a judicial question as to whether the contemplated use for which property is sought to be condemned to be a public one; but it does not authorize the court to determine the public necessity for the taking. Appellant's mayor and commissioners alone could decide that question. Their decision, unless brought about by fraud or

abuse of discretion, is conclusive. *Ham* v: *Board of Levy Commissioners,* 83 Miss. 534, 35 So. 943. There is nothing in the record in this case showing or tending to show that their determination of the question of public necessity was the result of either fraud or an abuse of discretion.

Property already devoted to public use may be again taken or damaged for public use. *Illinois Cent. R. Co.* v. *State,* 94 Miss. 759, 48 So. 561; *Ewing* v. *Alabama & V. Ry. Co.,* 68 Miss. 551, 9 So. 295. Under section 17 of the Constitution appellant was without authority to condemn more than the public necessity required. It is only for *public use* that private property may be taken or damaged without the consent of the owner. If more than is required for public use is taken, the excess is taken in violation of section 17 of the Constitution. Such excess would be taken for a private and not a public use. We are of the opinion, therefore, that appellant could not be driven beyond the public necessity in condemning appellees' easement.

Appellees argue that the result would be that the value of their easement will be entirely destroyed if appellant is given an equal easement with them. To sustain that contention they cite *Vicksburg* v. *Vicksburg Waterworks Co.,* 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253. It was said in that case that the competition of the city might be far more destructive than that of a private company; that the city might conduct its water and sewer systems without regard to profit or gain, as it had power to resort to public taxation to make up the loss. It seems to us that a complete answer to that contention is that, under section 17 of the Constitution and section 1865, Code 1906 (Hemingway's 1927 Code, section 1571), appellees would be entitled to compensation not only for the part of their easement actually taken as specified in the eminent domain application, but, in addition, damages resulting to them as a consequence

of the taking—in other words, consequential damages. *Vicksburg* v. *Herman,* 72 Miss. 211, 16 So. 434; *Yazoo & M. V. R. R. Co.* v. *Lefoldt,* 87 Miss. 317, 39 So. 459; *Brahan* v. *Meridian Home Telephone Co.,* 97 Miss. 326, 5: So. 485.

Appellees contend that the description of the right or easement which appellant sought to condemn by the eminent domain proceeding, as set out in the application therefor, is void because of indefiniteness. It is described in the application as a right and easement under all the streets, boulevards, alleys, and avenues, not to exceed ten feet in diameter by their length, the space to be filled by one or more pipes or sewers to be laid in one or more places, and to be done in such a manner as not to interfere with the carrying and conveying of water and sewerage in the pipes, mains, and laterals laid or to be laid by appellees, and in addition to establish and maintain fire plugs within ten feet of the corners of the streets, boulevards, avenues, and alleys, the fire plugs not to exceed two feet in diameter and to extend above the surface of the ground to a height not exceeding four feet, and to be located and maintained in such a manner as would not interfere with the free and convenient use of the streets, boulevards, avenues, and alleys, nor with fire plugs erected or to be erected by appellees. A copy of the map of the Boulevard Addition from the records of the office of the chancery clerk of Leflore county was made an exhibit to the application. We are unable to see how the rights sought to be condemned could have been more accurately described. In the nature of things it would have been impracticable, if not impossible, for the application to have been more definite. To illustrate: Under section 3324, Code 1906 (Hemingway's 1927 Code, section 6760), a municipality is impowered to grant certain public utility franchises, among them, the right to install in the municipality a waterworks and sewerage system with a limitation of twenty-five years on the

grant, and that the right shall not be exclusive. A municipality grants to a corporation a franchise to install and maintain under its streets and alleys a waterworks and sewerage system. The paramount use of the streets and alleys is for public travel. The system must be installed in a manner not to unreasonably interfere with such use, and, furthermore, in a manner not to unreasonably trench upon the rights of any other public utility corporation theretofore granted a franchise by the municipality. Its water and sewer pipes and fire plugs must be constructed and maintained in the usual and customary manner, but, as to the exactness of their location, that cannot be determined in advance. The construction and maintenance of the system is under the supervision of the municipality. Later another corporation is granted a franchise by the municipality to establish and maintain a waterworks and sewerage system under all of its streets and alleys. In the latter grant, as in the first, it is unnecessary to provide the exact location of the water and sewer pipes and fire plugs, but there goes with the latter grant the obligation that the corporation receiving the franchise in the construction and maintenance of the system shall not interfere unreasonably with the waterworks and sewerage system theretofore constructed and being maintained by the former. In municipalities, new streets and alleys are opened up from time to time and old streets and alleys are sometimes abandoned; grades of streets and alleys are raised and lowered—all of which necessitate changes by waterworks and sewerage companies in the location of their water and sewer pipes and fire plugs. Such changes cannot be provided for in advance in the grant of a franchise by a municipality to install a waterworks and sewerage system. If the description of a public utility easement is sufficiently definite where the municipality is the grantor, certainly the same description is definite enough where the municipality is the grantee either by purchase or condemnation.

We find no merit in the other grounds upon which appellees ask that the decree of the court appealed from should be affirmed; and we do not consider them of sufficient gravity to call for a discussion by the court.

Reversed, the injunction dissolved, and appellees' bill dismissed.

*Reversed and bill dismissed.*

SMITH, C. J., disqualified, took no part.

ETHRIDGE, J. (dissenting). I am unable to agree with the majority of the court in their conclusions in this case. I agree that the city could condemn less than the entire street for the purpose for which it desired to condemn, but, when less than the entire street is sought to be condemned, the portion condemned should be specifically and definitely described and located.

The condemnation is wholly insufficient to describe with such certainty as is required so as to enable the owner of the rights condemned, and the court and jury condemning, to determine exactly what is condemned and what is left to be enjoyed by the owner, and, unless it is so described, I do not see how the court and jury can value the property taken except by the merest guess.

I make no claim to possess unusual prescience or extraordinary sagacity, or any expert skill in descriptive powers or draftsmanship, and yet I think it easy to conceive of a better description than the one set forth in the petition for condemnation.

The petition, in stating the rights sought to be condemned, states that it is "a right and easement under all of the streets, boulevards, alleys and avenues, not to exceed an aggregate of ten feet in diameter under each boulevard, street, avenue and alley by the length of each of the said streets, boulevards, alleys and avenues, and the said space to be filled by one or more pipes or sewers to be laid on one or more places, the total space to be occupied by the said water pipes, mains, laterals, and

sewers in any one street, avenue, boulevard and alley, not to exceed ten feet in diameter, by the length of said boulevards, streets, avenues and alleys respectively, but not so as to impair the usefulness in or about the carrying and conveying of water or sewerage of such pipes, mains, laterals, and sewers now laid or hereafter to be laid under said streets, boulevards, alleys and avenues, by the said defendant, S. L. Gwin,'' etc.

On what side of the street is the ten feet in diameter to be laid out? Is it to be laid out in one cubical body or is it to be laid out in separate parts of the streets and definite spaces fixed in the street for each separate pipe, main, or lateral to be laid? Is it to be laid out in the center of the street or on the side of the street, or is it to be laid at any place in the entire street that the city desires it to be laid, and, if so, how much space will be required for each pipe, main, sewer, etc.? The petition does not inform us. It is wholly silent as to where the ten feet in diameter shall be located and selected. Is the pipe to be laid a certain distance beneath the surface of the street, or is it to begin at the surface and extend ten feet from the surface downward? The petition does not inform us. There is no map drawn, or other matter, which aids the application so as to furnish a definite and certain description. It would be an easy matter to locate with precision the exact places in the streets where the city desired to put its utilities. If a water main was desired to be laid within three feet of the curb or outer boundary of the street or alley, on a given side of the street or alley, and run parallel with the street, any surveyor or other person with reasonable skill in laying such utilities would know exactly where to go and put such utility. If it was desired to lay a sewer pipe on one side of the street, it could be definitely located with reference to that side of the street, or with reference to the center of the street, and any person with the required skill, such as a surveyor or contractor, could go and locate the place

where such pipe or main was to be laid. The owner of the property would know what place in the street had been taken from him. The city, after a condemnation proceeding, would know exactly what it had gotten by such proceeding. In assessing damages, the jury would know what was taken and what effect it would have upon the remaining portions of the street to be occupied by the owner with his own utilities.

Again, the application is entirely silent as to where the laterals are to be located which are to connect with the water pipes and sewers, or to intersect the property so as to connect such property owner with such utilities. The jury cannot tell how many laterals are to be laid, or where they are to be laid, and the same observation is true as to the main pipes, etc., in the streets which are to connect with the property owners so as to furnish facilities for utilizing the city's utilities. Under the application, apparently, the city can occupy any space in the streets it desires, if the application is, as stated in the majority opinion, as specific as it can reasonably be made. It could easily be so described by a survey of the streets by the city, determining where and to what extent it desired to use the streets. While the application states that it is not to affect, impair, or interfere with the rights of the owners as to pipes already laid *or hereafter to be laid,* still there is nothing to show what is taken, or what pipes are laid by the owner, or what pipes may be laid by him hereafter. If the city lays one of its pipes where the owner is now not occupying such space, will the owner be permitted hereafter, when he desires to lay a pipe, to require the city to remove that which has been laid? If he has not such right, then the application is misleading.

Suppose the city elects to lay some of its mains or pipes under the center of the street, and thereafter the owner should desire to either operate himself, or sell the right to operate, a street car system over the street.

Would he be permitted to lay a track in the center of the street over the mains and pipes of the city? If so, what would become of the street car when it should be necessary to repair or replace the main pipes, laterals, etc., under the street car line? How would the company desiring to purchase such right know from the application and the judgment of the court just what portion of the street was occupied by the city? Of course, all these mains, pipes, and laterals when laid will be covered and will not be visible to the eye. Then how is one to know where they are? Will the city, when it goes to repair or replace them, have to go and dig in the street by guesswork until such pipes are located, or will there be some plan, or some specification, showing definitely and precisely where these pipes, mains, and laterals are? If it could be done by the city when laying these things in the ground, it could as well and as easily be done in the application, and these pipes, etc., would be certainly and definitely located, and that is what I conceive the law requires.

Section 1562, Hemingway's 1927 Code (the Eminent Domain chapter), among other things, provides as follows: "When any person . . . shall desire to exercise the right of eminent domain, he . . . shall make application therefor in writing, and the owners of the property sought to be condemned and mortgages, trustees, or other persons having an interest therein or a lien thereon, shall be made defendants thereto, which shall state with certainty the right and *describe the property sought to be condemned,* showing that of each defendant separately," etc.

In 7 Encyl. Pl. and Pr., p. 520, under the head of "Description of the Premises—a Necessity," it is stated: "Unless the requirements of the statute as respects the description of the property to be taken or the location of the proposed improvement are complied with, the petition will not confer jurisdiction. (b) *Sufficiency.*

Ordinarily, the description should be as definite as is necessary in a deed, and so certain that the lands to be taken shall be capable of definite and unmistakable ascertainment. Where the statute only requires 'a general description,' or where the particular location is to be determined, not by the petitioner, but by the court, or by commissioners appointed by the court, only a general description need be, or in fact can be given. This is generally the case in highway, ditch and drain condemnations. But where, as in railroad condemnations, the petitioner, and not the court, is to determine where the improvement shall be located, and what property shall be taken, the description must be of sufficient particularity to enable the land owner to know what property is required, and to enable a surveyor to locate it."

There are a number of cases cited illustrating this principle, and it is clearly stated in the above quotation that, where the petitioner is to determine where the improvement is to be located, he is required to accurately describe the property to be condemned. It will be noted from a reading of the provisions of the statute that the jury only determines the amount of damages resulting from the condemnation. They have no right or power to determine the sufficiency of the description contained in the petition. That is jurisdictional and necessary before any valid proceedings can be had. The decisions of this court hold the proceedings are statutory and that they must be strictly pursued. *Western Union Telegraph Co.* v. *Louisville & N. R. Co.,* 107 Miss. 626, 65 So. 650; *White* v. *Memphis, B. & A. R. Co.,* 64 Miss. 566, 1 So. 730; *Levee Commissioners* v. *Allen,* 60 Miss. 93, and the authorities cited therein.

While it is true, in my opinion, that the city could condemn less than the entire right of the owner in the street, it is clear that the city would have the right to condemn the entire right of the property owner, Gwin, in said street, and it is not easy to see any reason why

it should not be done, as it is evident that a private utility could not well compete in the same street with a public utility for the same services, and that being true, the property would be damaged possibly to the full extent of its value, and certainly, to a very large extent thereof, and the city would have to pay for such damages under section 17 of the Constitution.

It is stated in the majority opinion that under section 17 of the Constitution the appellant was without authority to condemn more than public necessity required, and that, if it is for the public use, property may be taken or damaged without the consent of the owner, and, if more than is required for public use shall be taken, the excess is taken in violation of section 17 of the Constitution. I think this statement in the opinion is calculated to mislead. The city is not limited to the immediate necessity in taking. Streets are usually considered necessary for municipalities. Where no reservations are contained in laying out streets, then the city acquires by dedication or condemnation the entire rights owned by property owners. So the streets would pass to the city by dedication or by condemnation proceedings, and it would be wholly immaterial whether the city immediately used the streets for such purposes or not. When it becomes necessary to condemn for one purpose of a public nature, there is no reason why such condemnation should not embrace all public rights that may be necessary in the future. In my opinion, it is not necessary to have a series of condemnations. If a city had originally condemned a street, the condemnation proceeding would give it full rights to occupy the street for all purposes. It is true, possibly, that the city could institute condemnation proceedings for the surface of the street only, but it appears that it would be an unwise course to proceed by piecemeal as the necessity arose or the public demands became imperative.

The elements of damages pertinent to this case are found in *Vicksburg* v. *Vicksburg Waterworks*, 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253, and the authorities cited thereunder.

It appears to me that the application is so indefinite and uncertain that it will be impossible for the property owner to prove his damages measured by the application, or for the jury to value them guided by the application. If the petition means that the city can go into any part of the street it desires to lay its mains, pipes, and laterals on, that is equivalent to condemning the entire rights of the property owners, because such a condemnation essentially and necessarily destroys the value of his property and makes it useless to him. As I understand the scheme of the property owner in laying out the subdivision and reserving the rights, it was to make it attractive to buyers of lots on account of the facilities of water, etc., furnished. What will become of the owners in selling the remaining lots, if the buyers cannot operate the facilities promised under contracts already made?

It seems to me that the application is made in such manner as to confuse the jury and the property owner so as to prevent a fair assessment of the injury and damages sustained by the condemnation, and that the result is that the public, clamoring for property for public use, will get it at the hands of the jury by an unfair and inadequate valuation.