MISSISSIPPI STATE HIGHWAY COMMISSION *v.* MORGAN, et ux.

No. 43036 January 27, 1964 160 So. 2d 77

*Boyd, Holifield & Harper,* Laurel, for appellant.

*Gartin, Hester & Pickering,* Laurel, for appellees.

ETHRIDGE, J.

This case is a contest of an action by the State Highway Commission, appellant, to get substitute condemnation for the use of an owner who has been deprived by the Commission of a permissive right-of-way for a conceded public use. We hold the Commission has the power of substitute condemnation in a proper case, but that in this instance it abused its discretion. Hence we affirm the Circuit Court of Jones County, which issued a writ of prohibition against the agency, restraining the particular condemnation proceeding.

The new United States Interstate Highway No. 59 runs north and south within the municipal limits of the town of Sandersville in Jones County. It is a limited access highway, which closes a public road formerly running east and west across land occupied by the new route. On the east side of Highway 59 and north of the old east-west public road, Ray Morgan, appellee, owns 79.12 acres. North of Morgan's tract, and also on the east side of the highway, James Keller, Jr. and others (called Keller) own four 40-acre tracts vertically one above the other. North of the Keller property is a public road.

Keller's home is near the center of his south 40-acre tract, and there is and has been in recent years no practicable road running north through his remaining land (about three-fourths of a mile) to the public road on the north side. For about fifty years, Keller and

his predecessors in title have obtained access from their home to the public road on the south side of the Morgan land by means of a narrow, rough, dirt trail, in and along which there are a number of stumps and trees, with no bridges. During heavy rainfalls and for much of each year, this trail is impossible for vehicles to traverse. At the north boundary of Morgan's land, where the trail from the Keller tract enters, there is a wooden gate. Morgan's land is fenced. The trail meanders southwesterly into what is now the right-of-way of Highway 59, and then back toward the southeast into the public road on the south side of the Morgan tract. At that point Morgan has maintained a gap. Both the gap and the gate are kept closed by Morgan and Keller when either or both are grazing cattle, and frequently on other occasions. The trail north through the Morgan property to the Keller home is not a public road.

The commission purchased for Highway 59 a strip of land on the west side of the Keller tract. That is not an issue, but the testimony indicates that, in buying the strip from Keller, the Commission's agent advised him, since it was closing by condemnation part of his access trail over Morgan's land to the public road on the south, the Commission would substitute for him an easement located east of the east line of the highway right-of-way, so that Keller could continue to have access south to the public road.

The commission brought condemnation proceedings against two parcels of land on the west side of the Morgan property. Parcel No. 1 was a strip to be used for the right-of-way of the interstate highway. Morgan concedes this was for a public use. This controversy is over Morgan's Parcel No. 2. The commission sought to condemn on the west side of the Morgan tract, and east of the Highway 59 right-of-way, an easement in a strip of land approximately 939 feet in length and 30 feet wide ''to be used for the purpose of relocating

an access road, which relocation is necessary as a result of the construction of the proposed highway project." The condemned highway right-of-way appropriated approximately that much of the trail previously used by Keller in going through the Morgan tract to the public road on the south.

The easement was designed to serve as a relocation of the trail Keller used from his property south through the Morgan land to the public road. However, it runs from the northwest corner of the Morgan land, east of the highway right-of-way, south for about 939 feet, and it ends at a point where the trail turns back southeast on the Morgan property, which is about 300 feet north of the public road. In short, the south end of the sought-to-be-condemned easement terminates substantially north of the public road. Although designed to furnish Keller with an outlet in substitution of that part of the trail taken by the highway right-of-way, it ends well above the public road. Use of the easement by Keller would necessitate him traveling for 300 feet over a part of Morgan's land which is not being condemned by the commission.

Accordingly, Morgan filed this suit for a writ of prohibition. Mississippi Code 1942, Rec., section 2782 authorizes the use of prohibition to determine whether there is a public necessity for the taking. Essentially public necessity is a legislative question, with the burden of proof on the landowner to show an abuse of discretion or fraud. Under Mississippi Constitution 1890, section 17, public use is a judicial question. Culley v. Pearl River Indus. Comm., 234 Miss. 788, 108 So. 2d 390 (1959); Pearl River Valley Water Sup. Dist. v. Brown, 156 So. 2d 572, 578 (Miss. 1963).

After a hearing, the circuit court found that the trail or way of access used by Keller over the Morgan land was nothing more than a "permissive use." He had not obtained a prescriptive easement.

There was ample evidence to support this finding. █ A use which has its inception in the permission of the owner will continue as such, until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts. █ Where the use of a private way is by the express or implied permission of the owner, the continued use is not adverse and can not ripen into a prescriptive right. The evidence warrants application of these principles here, and justified the finding that Keller had no easement by prescription over Morgan's land, but only by permissive way, which was subject to being terminated by Morgan at his pleasure. Patterson v. Harris, 239 Miss. 774, 125 So. 2d 545 (1960), is closely analogous.

2 Nichols, Eminent Domain (1963), section 7.226 defines substitute condemnation in this way:

"Under certain extraordinary conditions the conventional method of compensating an owner whose property is taken by proceedings in eminent domain by paying him the value thereof is completely inadequate. To do complete justice to such an owner and, what is even more important, to meet the practical problems which arise by reason of the taking, it becomes necessary to furnish such owner with other lands as a substitute for the lands which have been taken. The question then arises whether or not such substituted lands may be acquired by eminent domain by the original condemnor, either in the original or a supplemental proceeding, for the use of the owner who has been forced to give up his property for a conceded public use. Is such secondary acquisition of property to be considered for a public use?

"The question has been answered in the affirmative not only in jurisdictions which subscribe to the liberal interpretation of 'public use' but even in those where the narrow doctrine ordinarily prevails. Thus, where part of a railroad right of way is condemned for the

purpose of widening a state highway, the state may also condemn other property to be used by the railroad as a substituted right of way for the one originally taken. Dohany v. Rogers, 281 U.S. 362, 74 L. Ed. 904, 50 S.Ct. 299, 68 A.L.R. 434 (1930). Where the federal government has condemned a townsite for the purpose of flooding such property and creating a reservoir, it may condemn other property for the purpose of a townsite to replace the land flooded. Brown v. U. S., 263 U. S. 78, 68 L. Ed. 171, 44 S.Ct. 92 (1923).

"While it may be argued that in both of the illustrative cases the secondary purpose was also public in character, (though not a public use of the condemnor), it has been held that where the sole means of access of an owner has been condemned for railroad purposes, the railroad was properly empowered to acquire a right of way over the lands of others for the use of the original condemnee so that the latter might have a substitute form of access. Pitznogle v. Western Maryland R. Co., 119 Md. 673, 87 A. 917, 46 L.R.A. (NS) 319 (1913)."

In brief, compensation by substitution has been applied in highway re-routing, railroad relocation, and even in relocating an entire town, as in the Brown case. In *Pitznogle* the substitute right-of-way which provided a substituted method of access for the damaged land owner resulted in full and unrestricted access for him to a public road. Also in Luke v. Massachusetts Turnpike Authority, 337 Mass. 404, 149 N.E. 2d 225 (1958), the substitute easement taken by the Turnpike Authority gave the owners unrestricted access to a public road. See 18 Am. Jur., Eminent Domain, § 80; Anno., 68 A.L.R. 442 (1930); Herr v. City of St. Petersburg, 114 So. 2d 171 (Fla. 1959); Pearl River Valley Water Sup. Dist. v. Brown, 156 So. 2d at 576; Missouri ex rel State Hwy. Comm. v. Eakin, 357 S.W. 2d 129 (Mo. 1962); Tiller v. Norfolk & Western Ry. Co., 201 Va. 222, 110 S. E. 2d 209 (1959). That is not the case here.

■ ■ In proper circumstances the State Highway Commission has the statutory authority to utilize substitute condemnation. Miss. Code 1942, Rec., §§ 8039-5, 8039-09, 8038. Moreover, since the easement was in the town's limits, the Commission properly and adequately found "unusual conditions" to warrant a width of less than 60 feet. Code §§ 8023, 8039-05.

■ ■ However, the Commission abused its discretion in seeking to condemn Parcel No. 2 easement owned by Morgan. It would terminate at a dead-end, on Morgan's land 300 feet north of the public road. It would connect to the old trail used permissively by Keller over Morgan's property, but it would not connect with any easement or right of property vested in Keller. He had only a permissive way, subject to termination at any time. If Parcel No. 2 connected with an easement owned by Keller, it would be a legitimate substitute form of access acquired by the Commission for the use of the owner who had been forced to give up his property for a conceded public use. But here those facts do not exist. The easement, if condemned, would not furnish Keller a right of access to the public road on the south. It would terminate 300 feet north of that point, with no property right in Keller for traversing the remainder of Morgan's land to the road on the south. For these reasons, we hold that the Commission abused its discretion in seeking to condemn Parcel No. 2, and the circuit court was correct in prohibiting continuance of condemnation proceedings as to that tract. Hence the judgment of the circuit court is affirmed, without prejudice to any other rights or remedies, if any, which might be asserted by the parties or by Keller.

Affirmed.

*Kyle, P. J., and McElroy, Rodgers and Patterson, JJ.,* concur.