MISSISSIPPI STATE HIGHWAY COMMISSION *v.* MORGAN, et ux.

No. 43528 May 31, 1965 175 So. 2d 606

*Boyd, Holifield & Harper,* Laurel, for appellant.

*Gartin, Hester & Pickering,* Laurel, for appellees.

Lee, C. J.

This appeal is a sequel to Mississippi State Highway Commission v. Morgan, 248 Miss. 631, 160 So. 2d 77 (1964).

In that instance, the Commission, in locating the limited access U. S. Interstate Highway No. 59 partly in the Town of Sandersville in Jones County had crossed an east and west public road. North of that road and east of the proposed Highway No. 59, Ray Morgan owned 79.12 acres of land. Adjacent to and north thereof, James Keller, Jr., owned four forties of land vertically one above the other. His home was situated about the middle of the south forty. While there was a public road alongside of the north forty, "there is and has been in recent years no practicable road running north through his remaining land (about three-fourths of a mile) to the public road on the north side." Keller and his predecessors in title, for approximately 50 years, had been permitted to use a trail through the Morgan property to reach the public road to the south, but this means of access was not a public road, and he had obtained no legal right to its continued use if and when the Morgans withdrew that permission; and that was done.

The Commission, in securing a strip of land off the west side of the Keller tract for the right-of-way of

Interstate Highway No. 59, agreed that it would substitute an easement on the east side of the right-of-way and afford him access to the public road to the south. In compliance with that agreement, the Commission instituted condemnation proceedings to secure from the Morgans both access and right-of-way interests, as described in two parcels of land, designating them as No. 1 and No. 2. There was no controversy over parcel No. 1. In fact the Morgans conceded that it was for public use.

At that juncture, the Morgans filed their petition for a writ of prohibition in order to determine the right of the Commission to condemn. The writ was granted, and, on final hearing, was made permanent. That action was affirmed, on appeal, by this Court.

In so affirming the circuit court, the opinion held that the Commission had the power of substitute condemnation. It cited Mississippi Code Annotated sections 8038, 8039-05, and 8039-09. It further documented this conclusion with 2 Nichols, Eminent Domain, section 7.226 (1963); Dohany v. Rogers, 281 U. S. 362, 74 L. Ed. 904, 50 S. Ct. 299, 68 A. L. R. 434 (1930); Brown v. U. S., 263 U. S. 78, 68 L. Ed. 171, 44 S. Ct. 92 (1923); Pitznogle v. Western Maryland R. Co., 119 Md. 673, 87 A. 917, 46 L. R. A. (N. S.) 319 (1913); Luke v. Massachusettes Turnpike Authority, 337 Mass. 404, 149 N. E. 2d 225 (1958). The opinion pointed out that the Pitznogle case, *supra,* in substance had held that "the substitute right-of-way which provided a substitute method of access to the damaged landowner resulted in full and unrestricted access for him to a public road." The same result was attained in the Luke case, *supra.* Other authorities were also listed.

The opinion also held that the Commission properly and adequately found unusual conditions to warrant the taking of less than 60 feet, and hence, was not violative of sections 8023 and 8039-05 of the Code.

The opinion then set forth at page 638 the sole grounds for affirmance of the trial court's judgment as follows:

However, the Commission abused its discretion in seeking to condemn Parcel No. 2 easement owned by Morgan. It would terminate at a dead-end, on Morgan's land 300 feet north of the public road. It would connect to the old trail used permissively by Keller over Morgan's property, but it would not connect with any easement or right of property vested in Keller. He had only a permissive way, subject to termination at any time. If Parcel No. 2 connected with an easement owned by Keller, it would be a legitimate substitute form of access acquired by the Commission for the use of the owner who had been forced to give up his property for a conceded public use. But here those facts do not exist. The easement, if condemned, would not furnish Keller a right of access to the public road on the south. It would terminate 300 feet north of that point, with no property right in Keller for traversing the remainder of Morgan's land to the road on the south. For these reasons, we hold that the Commission abused its discretion in seeking to condemn Parcel No. 2, and the circuit court was correct in prohibiting continuance of condemnation proceedings as to that tract.

The Court then made this final statement:

Hence the judgment of the circuit court is affirmed, without prejudice to any other rights or remedies, if any, which might be asserted by the parties or by Keller.

Following the decision of this Court, the Mississippi State Highway Commission, forthwith, on January 28, 1964, adopted its resolution of public necessity for the taking of an additional strip of the Morgan land for public use to continue the Parcel No. 2 easement down to a junction with the county public road on the south, as set forth therein. It directed the Chief Engineer of

the Department to prepare the necessary amended plans and specifications therefor, and authorized and requested the Attorney General to institute all condemnation proceedings for the acquisition of such property for public use.

The Attorney General, agreeably to the request and instructions of the Commission, thereafter filed an amended petition for condemnation of such parcels, returnable to the March 1964 term of the County Court of the Second Judicial District of Jones County, and on April 7, 1964, the Circuit Judge granted a temporary writ of prohibition, staying the hearing in the County Court until the Circuit Judge had decided the same.

The cause was heard by the learned Circuit Judge, who found that the facts were essentially the same as in the original writ of prohibition with a slight exception, as named, and, on April 29, 1964, ordered the temporary writ to be made permanent. From that judgment, the Commission has again appealed.

From the declarations of the Commission and the metes and bounds descriptions of the property to be condemned, together with the map and plat thereof, it appears that the Commission will be assured that it will acquire a strip of land for public use both as right-of-way for Interstate Highway No. 59 and access thereto over and across the lands of the Morgans from the north line of their property to the public road along the south boundary of the same. In the former appeal, there was an abuse of discretion on the Commission's part because the object of access would not be assured. In the present case, the purpose will be attained.

But the appellees argue that the Commission is actually taking their land for the use of one individual and that this is not a public use.

However, it must be remembered that the prime purpose of this suit was to acquire a right-of-way for this highway. In order to do so, it was necessary, under

Section 17 of the Constitution, that due compensation should first be made to the owner. One of the misfortunes, attendant upon the construction of limited access highways, is the destruction of the egress and ingress of landowners. Public officials, in the exercise of their right to take private property for public use, ought undoubtedly to minimize such damage as far as is reasonably possible and in keeping with their duty not to expend public moneys needlessly. The Court is mindful that, in such dilemmas, a wide measure of discretion must be recognized. Erwin v. Miss. State Highway Comm'n, 213 Miss. 885, 58 So. 2d 52 (1952), and cases therein cited. ■■ ■ It must also be kept in mind that the acquisition of an easement or right-of-way for the benefit of parcels of land incidentally cut off from all or some means of access to an existing way, is a mere by-product of laying out the highway, which is essential for the purpose of accomplishing its purpose.

In 18 Am. Jur. *Eminent Domain* section 41, at 669-71 (1938), it is said:

> The general rule is settled that the exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not of itself warrant the exercise of the power. This condition arises in every case in which a taking is made by a public service corporation. The incidental benefit to the stockholders in the profits arising from tolls, fares, and other charges does not render the use for which the taking is made a private use, if the tolls, fees, and charges are to be derived from serving the public. Similarly, the fact that incidental private advantages to certain lands are expected to accrue from the construction of the improvement does not derogate from the public nature of the use, if it is constructed for the benefit of the public. Nor does the fact that a by-product of the taking is sold for private

use derogate from the public nature of the use. This rule has been applied in respect of incidental benefit from surplus power or water developed in a taking for public use, from the condemnation of land for parks, from the opening, relocation, or change of grade of a highway, from irrigation projects, from harbor improvements, from the drainage of wet and over-flowed lands, and from gasoline extracted from gas before being distributed to consumers.

This principle was cited and applied in Culley v. Pearl River Industrial Commission, 234 Miss. 788, 108 So. 2d 390 (1959), where the Court held that the taking of lands by condemnation in the one-quarter mile perimeter of the reservoir and their subsequent sale or lease for the purpose of operating recreational facilities was not vio-lative of the constitutional prohibition against condem-nation for a nonpublic use. The twelveth syllabus of that opinion says:

The general rule is settled that the exercise of emi-nent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not of itself warrant the exercise of the power.

Again, in the case of Pearl River Water Supply Dis-tract v. Brown, 248 Miss. 4, 156 So. 2d (1963), the land-owners were contending that the use of land, condemned through eminent domain, for restaurants, motels, and other enumerated activities would be for private and not public purposes. However, the opinion held that ''all of such incidental uses are public uses,'' citing a number of authorities. The syllabi of that opinion give a quick index to the holding in that case, and provide a ready and exhaustive authority for the question here before the Court.

 Under this condemnation proceeding, the Com-mission seeks both a right-of-way and an easement for access, and the title thereto will become vested in the

Commission. Its subsequent compliance with its covenant and agreement with Keller, as heretofore stated, to furnish access for him to the public road on the south cannot be construed as for his exclusive benefit.

The appellees also contend that the proposal of the Commission in this instance may rightfully be denominated as unique.

If this happens to be the first occasion for the application of the principle in this state, only in that way is such a denomination correct. The cited authorities show that it has been so applied in many other jurisdictions. There is no contravention of Section 17 of the Constitution. When it is remembered how the country is now so completely dependent upon roads for travel both for business and for pleasure — and this must also take into consideration the safety of persons and property — one is readily overwhelmed in the conviction that public necessity exists in the present instance. Even though public necessity in the early days of the country did not require such takings, it assuredly does so in these modern days. Besides, the wisdom of constitutional provision 17 is both clear and so extensive that it affords means and methods for the satisfaction of present day needs and public necessities.

The Court is of the opinion that the use here in question is a public use; that there is no proof of fraud or abuse of discretion; and that the learned judge was in error in granting the permanent writ of prohibition.

Those propositions were the heart of this appeal, and it is therefore unnecessary to respond to other arguments of the appellees as grounds for affirmance.

The judgment of the trial court must be, and it is, reversed, the writ of prohibition is quashed and discharged, and the cause is remanded to the county court for trial of the condemnation proceedings.

Judgment reversed, writ of prohibition quashed and discharged, and cause remanded to the county court for trial.

All Justices concur, except *Patterson and Inzer, JJ.,* who dissent.

PATTERSON, J., dissenting:

I dissent from the opinion of the majority as I am convinced that the condemnation of the appellee's land is in violation of Mississippi Constitution Article 3, section 17, is not authorized by law, is not justified by the facts, and as such is a needless taking of an individual's property by the commission for private use.

The facts and pleadings reveal the appellant is locating a limited access U. S. Interstate Highway No. 59 through Jones County, Mississippi. A portion thereof is partially in the town of Sandersville in said county and extends northward adjacent to the property of the appellee which is on the east side of such highway as is the property of one Keller who owned four forties of land immediately north of appellee's property. These four forties are vertical to each other. The house of Keller is situated in the middle of the south forty. Keller's property abuts an east and west public road on the north for a distance of approximately one-quarter of a mile. This road is maintained by the county.

For many years Keller had used a trail from his home in the south forty across a portion of Morgan's land to an east and west public road which abuts Morgan's property on the south. The use of this trail or roadway was permissive as is agreed by the parties and as was found by this Court in *State Highway Comm'n v. Morgan,* 248 Miss. 631, 160 So. 2d 77 (1964), wherein it stated:

> The evidence warrants application of these principles here, and justified the finding that Keller had no easement by prescription over Morgan's land, but only *a permissive way, which was subject to being terminated by Morgan at his pleasure.* (Emphasis added.) (160 So. 2d at 79).

In negotiating with Keller for the purchase of the strip of land on the west side of his tract, not in issue, the record reflects in *State Highway Comm'n v. Morgan* (which is made a part of the record here) as follows:

. . . but the testimony indicates that, in buying the strip from Keller, the Commission's agent advised him, since it was closing by condemnation part of his access trail over Morgan's land to the public road on the south, the Commission would substitute for him an easement located east of the east line of the highway right-of-way, so that Keller could continue to have access south to the public road. (160 So. 2d at 78.).

In Paragraph 5 of the supplemental order declaring the necessity for taking and the supplemental order to condemn we find:

5. That the agents and representatives of the Highway Commission had traded with the landowner Keller on the basis that the Highway Commission would substitute *for him* an easement located east of the east line of the highway right-of-way so that the *said landowner* would continue to have access south from his property to the county road. (Emphasis added.)

The appellant, in an attempt to fulfill this promise, brought condemnation proceedings to take Morgan's property in order to give Keller an easement, which resulted in the holding of this Court as set out in *State Highway Comm'n v. Morgan.* The cause was affirmed without prejudice to any other rights or remedies, if any, which might be asserted by the parties or by Keller.

Prior to the trial of this suit Morgan withdrew the permissive use which he had heretofore afforded to Keller, and again the commission seeks condemnation proceedings in furtherance of its promise to Keller as is indicated in Paragraph 5 of the supplemental order above-mentioned, which declares the necessity for tak-

ing, and which was subsequent of course, to Paragraphs 3 and 4 thereof, which are as follows:

(3) That a writ of prohibition was filed by Ray Morgan in the Circuit Court of Jones County in Case No. 7732 and a permanent writ of prohibition was entered by said Court prohibiting the State Highway Commission from condemning Parcel No. 2 Easement.

(4) That the State Highway Commission perfected an appeal to the Supreme Court, and that the Supreme Court under date of January 27, 1964, affirmed the judgment of the Circuit Court specifically holding that although the State Highway Commission had the power of substitute condemnation in the proper case that said Commission abused its discretion in failing to furnish the landowner Keller a right of access from his property to the public road on the south.

After the adoption of this resolution, an amended petition for condemnation of the described parcel was filed in the appropriate court of Jones County. The circuit judge granted a temporary writ of prohibition staying the hearing in the county court until the circuit court had decided the cause. After hearing, the temporary writ of prohibition was made permanent and from that judgment the commission has again appealed with the result as reflected by the opinion of the majority.

This opinion states that it must be remembered that the prime purpose of this suit was to acquire a right-of-way for this highway, and that one of the misfortunes attendant upon the construction of limited access highways is the destruction of egress and ingress of landowners. This leaves the inescapable inference that there was here a loss or the destruction of a right of egress and ingress to Keller. With deference to the majority such an inference is not justified from the facts as Keller lost no right of ingress or egress by the appellant's acquisition of the right-of-way for the highway.

The highway neither detracted from Keller's use of his land nor added to it. The fact is he never had an easement or other vested right to use Morgan's land. The most he had, as is admitted by all concerned, and as found by this Court, was a permissive use. This use has been withdrawn by Morgan as he had the right to do, which is conceded.

I am of the opinion, therefore, that this is not a substitute proceeding as announced, but is rather a direct condemnation proceeding. The word "substitute" is defined among other things in Webster's Third New International Dictionary (1961) as follows: "To take the place of." Can we judicially say a former permissive use which has been withdrawn is of such legal dignity that the sovereign can act in furtherance of an ultra vires promise thereon to take from one his vested right in order to give to the other that which he never had in the first place? I do not think so, and I am unable to find any authorities so holding.

Assuming, but not deciding, for the purposes of this dissent, that this is a substitute condemnation proceeding, I am of the opinion that the facts here do not warrant the application of this rule of law. This Court in *Morgan* cited with approval 2 Nichols Eminent Domain, § 7.226 (1963) which defines substitute condemnation proceedings in this way:

> Under certain extraordinary conditions the conventional method of compensating an owner *whose property is taken by proceedings in eminent domain* by paying him the value thereof is completely inadequate. To do complete justice to such an owner and, what is even more important, to meet the practical problems which arise by reason of the taking, it becomes necessary to furnish such owner *with other lands as a substitute for the lands which have been taken.* The question then arises whether or not such substituted lands may be acquired by eminent domain by the ori-

ginal condemnor, either in the original or a supplemental proceeding, for the *use of the owner who has been forced to give up his property for a conceded public use.* Is such secondary acquisition of property to be considered for a public use?

The question has been answered in the affirmative not only in jurisdictions which subscribe to the liberal interpretation of "public use" but even in those where the narrow doctrine ordinarily prevails. Thus, where part of a railroad right of way is condemned for the purpose of widening a state highway, the state may also condemn other property to be used by the railroad as a substituted right of way for the one originally taken. Where the federal government has condemned a townsite for the purpose of flooding such property and creating a reservoir, it may condemn other property for the purpose of a townsite to replace the land flooded.

While it may be argued that in both of the *illustrative cases the secondary purpose was also public in character,* (though not a public use of the condemnor), *it has been held that where the sole means of access of an owner has been condemned for railroad purposes,* the railroad was properly empowered to acquire a right of way over the lands of others for the use of the original condemnee so that the latter might have a substitute form of access. (Emphasis added.) (Id. at 667-669.).

See also, *Pitsnogle v. Western Maryland RR. Co.,* 119 Md. 673, 87 A. 917 (1913), also cited in *Morgan.* These authorities hold that when the sole means of access to property is made inaccessible by condemnation proceedings, substitute proceedings may lie to restore to the condemnee the equivalent of that which he has lost. In the present case, in addition to having lost no right of ingress or egress, Keller, by the admission of all parties, had direct access to a public road which abuts his prop-

erty on the north for a distance of one-quarter of one mile. No authority need be cited, I take it, to the effect that public monies may not legally be expended to furnish a roadway for a landowner from the place of his residence, his house, to a public road. All that has ever been required of any condemning authority is accessway from the perimeter of the owner's land to a public right-of-way.

The ultimate question is whether the taking of Morgan's land is for a public or private use. Article 3, Section 17 of the Mississippi Constitution provides as follows:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for *a use alleged to be public,* the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public. (Emphasis added.)

This constitutional provision has been the subject of interpretation by this Court in *Ham v. Board of Levee Commissioners,* 83 Miss. 534, 35 So. 943 (1903), *City of Greenwood v. Gwin,* 153 Miss. 517, 121 So. 160 (1929) and was followed in *Culley v. Pearl River Industrial Commission,* 234 Miss. 788, 108 So. 2d 390 (1959), wherein we stated:

> Whether the taking of a particular piece or parcel of property is necessary for the public use is, as held in Ham and Gwin, essentially a legislative question, to be determined by the District; but the courts may interfere if the District's determination of the question of public necessity is the result of fraud or abuse of discretion. (108 So. 2d at 402-403.).

Thus we must determine whether the commission abused its discretion in determining this particular par-

cel of land, which is separate and distinct from that condemned for highway and right-of-way purposes, was necessary for public use. I am convinced the trial court was eminently correct in holding there was an abuse of discretion by the commission as I am of the opinion the taking was purely and simply for a private use.

The condemnation here was in furtherance of a promise on the part of the commission to give to Keller a passageway. The parcel selected was on the west side of Morgan's property, and east of the land condemned for highway purposes. The language of the supplemental order so states, "would substitute *for him* an easement located east of the east line of the right-of-way so that *the said landowner Keller* would continue to have access. . ." (Emphasis added.), signifying clearly that the taking was for Keller only and the commission does not argue to the contrary. In fact they state their endeavors as follows:

> The State Highway Commission in this case has endeavored to provide a method of ingress and egress to a property owner across the property of Ray Morgan in lieu of the portion of the right-of-way over the land of Ray Morgan. . . .

This is borne out by all of the maps and plats exhibited and introduced in the cause. They show specifically that a thirty-foot right-of-way was obtained along the west side of Morgan's property from the county road on the south north to, and only to, Keller's property; that the same there come to a dead end. Only Keller, or those acting with his permission, could use it from that point northward, and the record does not indicate that he has dedicated any of his property to the public. If Keller was the public so that the taking might be justified on that premise, and assuming that he had no access to the public road on the north, I could agree with the majority, but he is not the public according to definition. Webster defines "public" in his Third New

International Dictionary (1961), among other things, as follows:

(a) Of, relating to, or affecting the people as an organized community;

(b) of or relating to the international community or to mankind in general;

(c) authorized or administered by or acting for the people as a political entity, an organized body of people, etc.;

(d) of or relating to business or community interests as opposed to private affairs.

*Culley v. Pearl River Industrial Commission and Pearl River Water Supply District v. Brown,* 248 Miss. 4, 156 So. 2d 572 (1963), relied upon by the majority, are not, in my opinion, in point as they refer to an incidental private use resulting from the original and parmount taking. The taking here is separate and additional as distinguished from incidental and resulting. See *Brown* wherein it is stated:

We have carefully considered the numerous cases relied upon by appellees and fail to find them applicable. . . . Courtesy Sandwich Shop, Inc. v. Port of New York Authority, 17 A. D. 2d 590, 237 N. Y. S. 2d 820 (1963), is not in point. In that case land was sought to be condemned which was not to be used for any public purpose. But the Court recognized that when land is taken for a public purpose which is primary and paramount, the taking will not be defeated by the fact that incidentally a private use or benefit will result which would not of itself warrant the exercise of the power. Applying that case here, it would follow that if the primary purpose of the proposed taking is private, the taking is unlawful. On the other hand, if the primary and paramount purpose of the taking is for public use, as in the case at bar, it will not be defeated because some incidental private benefit or use results. That is what the New York Court

held, and that is the effect of the Culley case. That same rule applies to the present case. (156 So. 2d at 577).

And, finally it is my opinion the dicta of *State Highway Commission v. Morgan,* 248 Miss. 631, 160 So. 2d 77 (1964) is not decisive of the instant issue.

I dissent with deference, therefore, to the majority, as I fear the far-reaching result of their opinion. The majority has made a point of law; the private citizen has lost his property; and once again, I fear, the rights of the individual vouchsafed to him by the constitution have been needlessly destroyed since, ironically, Keller has moved away.

I would affirm the decision of the lower court.

*Inzer, J.,* joins in this dissent.

*See Explanatory Diagram of the writer attached.