McMILLIN, C.J., for the court.
¶ 1. Jesse Wilson and a number of other individuals (the appellants in this proceeding, who will be referred to hereafter collectively as “Wilson” for purposes of reference) were conveyed an eighty acre tract of real property in DeSoto County by warranty deed dated November 22, 1995. In approximately 1998, the owners of an adjacent tract of property (the appellees herein, who will be referred to hereafter as McElyea) placed physical obstructions on an existing private roadway that had previously served as an access route to the Wilson property. Wilson commenced this litigation in the Chancery Court of DeSoto County seeking alternatively an easement by prescription or an easement of necessity over the McElyea tract.
¶ 2. At trial, the chancellor granted judgment for the McElyeas at the close of the Wilson’s case under Mississippi Rule of Civil Procedure 41(b). Additionally, on subsequent motion by the Wilsons, the chancellor found that the Wilsons had instituted suit “without substantial justification” and assessed attorney’s fees of $8,708.92 against them under the Mississippi Litigation Accountability Act.
¶ 3. McElyea has perfected an appeal from both of these rulings by the chancellor. We find that the chancellor was correct in determining that Wilson failed, as a matter of law, to present a case for an easement by necessity. However, we conclude that the chancellor misapplied existing case law in his holding that Wilson had failed to make a prima facie case for an easement by prescription. We reverse and remand for further appropriate proceedings limited solely to the existence of a prescriptive easement. We also vacate the chancellor’s order for attorney’s fees.
I.
Easement by Necessity
¶ 4. An easement by necessity may properly arise only when a parcel of property becomes landlocked in the process of being severed from a larger tract. Dieck v. Landry, 796 So.2d 1004, 1008(¶ 13) (Miss.2001). In this case, problems of access to the eighty acre tract in question did not arise out of any conveyance that involved severing it from a larger tract that included the McElyea property. To the contrary, the two tracts, insofar as the record before us reveals, have been separately owned for well over fifty years. Even if the Wilson tract as created by the 1995 conveyance was landlocked, there existed no legal theory to impose an easement of necessity over the adjoining McE-lyea property.
II.
Easement by Prescription
¶ 5. Different considerations arise in the matter of a prescriptive easement, however. Wilson provided evidence from persons who had lived on the Wilson tract as tenants of a prior owner that the road in dispute had provided the sole access from a public way into their residences. All those witnesses testified that their occupancy of the property had ended in the early 1970’s, but at least one witness testified that the road had provided access for as long as he could remember and that he had lived on the property for in excess of thirty years.
*464 ¶ 6. During this period of time, according to the proof, the McElyea tract had been owned by Frank Daniel and later by his son, James Daniel. The Wilson tract had been owned by Bill Williams. Much of the contention at trial in examining and cross-examining these former tenants on the Wilson tract revolved around whether they understood their use of the roadway over the McElyea tract to be with or without the permission of either Frank Daniel or James Daniel. No witness testified to having any direct dealings with either of the former owners. The essence of their testimony was that they simply understood that the road had always been used for access to the property containing their residences. Little proof was offered regarding the nature of the use of the roadway after the Wilson tract no longer served as a permanent residence for these tenants of a prior owner.
¶ 7. The chancellor, in declining to adjudicate a prescriptive easement, noted the six elements necessary to prove the existence of such an easement. He listed them as (1) the use must be under a claim of ownership, (2) it must be hostile to the owner of the servient estate, (3) the use must be open and notorious, (4) it must be continuous and uninterrupted for the prescriptive period of ten years, (5) it must be exclusive, and (6) it must be peaceful. Myers v. Blair, 611 So.2d 969, 971 (Miss.1992). The chancellor found that Wilson had satisfactorily proven several of the elements, but found the evidence entirely lacking that the use was hostile or under a claim of right. He also concluded that there was no evidence that the use was exclusive as to the Wilsons. An apparently critical part of the chancellor’s reasoning appears in the following excerpt from his bench ruling:
There was no evidence at the same time, of course, that permission was ever granted by Mr. Williams, the predecessor in title to the defendants, for them to use that road. However, the burden is not on the defendants at this stage in order to show that. It is on the plaintiffs to show that there was, in fact, no permission.
¶ 8. This Court, in reviewing the grant of a Rule 41(b) motion on appeal, applies the substantial evidence standard to evidentiary questions and the manifest error standard to issues of law. Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). Clearly, the critical issue in dispute in this case was one of fact, that is, was the use of the roadway as reported by the various tenants with the permission of the adjoining owners or hostile in the sense that the users asserted their right of use existed independent of whether the adjoining owners did or did not acquiesce in that use. McElyea contended that the use was permissive by eliciting testimony that these adjoining owners, in the time testified to by the tenants, had enjoyed good neighborly relations. Wilson attempted to show that none of the tenants either sought or received actual permission from any member of the Williams family and contended that this was evidence that their use was under a claim of right not dependent, directly or indirectly, on permission.
f 9. The critical point of inquiry in this situation must focus on the quality of the use of the roadway at the inception of its use for ingress and egress since the law is clear that a use permissive at its inception cannot subsequently be transformed to a hostile use by the mere passage of time, no matter its duration. Mississippi State Highway Comm’n v. Morgan, 248 Miss. 631, 635-36, 160 So.2d 77, 79 (1964). Likewise, it would seem plain that the owner of the servient estate may not change the character of *465 use that began as hostile under a claim of right by the simple act of unilaterally granting permission for future use since the character of the use is more properly determined from the standpoint of the user and not the owner of the servient estate.
¶ 10. The chancellor found as a matter of fact that there was no evidence one way or the other from which he could determine the nature of the use at its inception. We find that finding of fact to be entirely correct. There was, in fact, no evidence even suggesting that the use of the roadway first commenced during the ownership of the two tracts by Frank or James Daniel and Bill Williams. Insofar as the record now shows, it is just as likely that use of the roadway in question predated these owners, so that evidence regarding the nature of their relationship over the years as friendly and accommodating to each other might be entirely irrelevant on the critical issue of the nature of the use when it began.
¶ 11. The chancellor used this finding of fact to support his holding against Wilson. In so doing, the chancellor concluded that the absence of proof one way or the other as to the nature of the use of the roadway at its inception meant that the Wilsons had failed in their burden of proof. We find that, on the present state of the evidentiary record in this case, to be a misapplication of the law requiring that we reverse. In McCain v. Turnage, the Mississippi Supreme Court considered a case where “the circumstances of the original use of the roadway [was] unknown” and adopted this rule:
We hold that where, as in this present case, a use of the lands of another for roadway purposes has been open, visible, continuous, and unmolested since some point in time anterior to the memory of aged inhabitants of the community, such use will be presumed to have originated adversely.
McCain v. Turnage, 238 Miss. 44, 117 So.2d 454, 455-56 (1960). That rule was reaffirmed in Joachim v. Villa Santini, Inc., 353 So.2d 767, 768 (Miss.1977).
¶ 12. At the time the chancellor considered the McElyea’s Rule 41(a) motion, the best construction of the available evidence was that the roadway existed prior to the earliest memory of any witness available-a time that, by simple mathematical computation, would indicate that it extended back into the 1940’s. To deny the Wilson’s relief because of their inability to produce affirmative evidence as to the circumstances in which the road came into existence was, at that point in the trial, a misapplication of the rule announced in McCain v. Turnage. Because the presentation of the proof in this case was halted prior to a full development of the facts when the trial court granted judgment for the McElyeas under Rule 41(a) at the close of the Wilsons’ proof, there remains the possibility that additional evidence may have been available for presentation to the chancellor had he ruled correctly and denied the motion.
¶ 13. We, therefore, reverse and remand for a full evidentiary hearing, affording both the Wilsons and the McElyeas the opportunity to present evidence bearing on all relevant issues, and, in particular the matter of the time and the circumstances in which the roadway in dispute came into existence. At the conclusion of that hearing, the chancellor will be in position to make appropriate findings of fact as to the various elements necessary to establish an easement by prescription and, if it remains appropriate at the conclusion of all the evidence, to properly apply the presumption established in McCain v. Tumage to determine the proper outcome of the litigation.
*466 III.
Attorney’s Fees
¶ 14. Because the chancellor’s finding that this suit was brought without justification appears to have been based, in part, on the erroneous assumption that the absence of affirmative evidence that the original use of the disputed road was hostile to the owners of the servient estate was fatal the Wilsons’ case, we find it appropriate to set aside the award of attorney’s fees granted under the Mississippi Litigation Accountability Act. On the limited presentation of proof cut short by the chancellor’s decision to grant the McElyeas’ Rule 41 motion, the fundamental failing in the Wil-sons’ case as perceived by the chancellor was, in fact, supplied by a legal presumption that operated in the Wilsons’ favor. For that reason, this suit cannot be reasonably seen as frivolous. In that circumstance, the award of attorney’s fees was not appropriate.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEES.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND BRANTLEY, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.